Mississippi State Highway Commission *v.* Deavours, et al.

No. 43319 January 25, 1965 170 So. 2d 639

*J. M. Travis,* Heidelberg, for appellant.

*McFarland & McFarland,* Bay Springs; *Deavours & Hilbun,* Laurel, for appellees.

JONES, J.

This is an appeal in an eminent domain proceeding from the Circuit Court of Jasper County. Judgment was there rendered for the appellee in the amount of $6,500, but inasmuch as we have determined that the case should be reversed on other grounds, it is not necessary for us to discuss the assigned excessiveness of the judgment.

We are reversing this case because as a whole there was so much incompetent, irrelevant and immaterial evidence admitted over the objection of appellant, that it could not have been a fair trial. This evidence was calculated and could have been offered for no other purpose than to bias and prejudice the jury. The issue at trial was the amount of damages incurred because of the taking of the land. The evidence admitted and quoted herein had no bearing on this issue. As an example of some of such evidence introduced, we quote from various parts of the record.

The Commission offered as its first witness in the case Mr. R. E. Rankin, a civil engineer employed by the Highway Department. On cross-examination, the following questions, answers, objections and rulings appear in the record:

"Q. And this is now and will be upon completion and during the operation of it a Federal Aid project?

"A. Yes, it's Federal Aid.

"Q. That means that the Federal Government is participating in this roadway, doesn't it?

" : : Mr. Travis: Now, we object because the Federal Government is not a party to this suit. Any testimony and evidence of any witness would be incompetent, prejudicial, I mean in this matter because the highway is being paid for by the State of Mississippi and the Federal Government has no interest insofar as acquiring this right-of-way. Any testimony and evidence with reference to any participation of the Federal Government in this matter would be incompetent and prejudicial to the petitioner, Mississippi State Highway Commission.

" : : The Court: Overruled.

"Q. Now, Mr. Rankin, you have said and read from the application that it was a Federal Aid project. Now, in the objection to the testimony by attorneys for the plaintiff, one of the reasons assigned in the objection

was that the State Highway Department was paying for this roadway. Does the Federal Government participate in the payment of the cost of the procurement of the right-of-way and the construction of this road?

"﹕ ﹕ Mr. Travis: To which we continue to object for the same reasons heretofore assigned in the record.

"﹕ ﹕ The Court: Overruled.

"A. The Federal Aid designation indicates that the Federal Government helps us in financing this road, yes, sir.

"Q. And in what proportion?

"﹕ ﹕ Mr. Travis: We object to that, continue—

"﹕ ﹕ The Court: Overruled.

"A. This is on the basis of 90 percent Federal, 10 percent State, which is on every sign, three or four on every project.

"Q. 3 or 4 on every project?

"A. 3 or 4 signs on each project to give the general public the information, the cost of the road and the participation is on those signs.

"Q. And that is that the Federal Government is paying 90 percent of the cost and the State Government 10 percent of the cost?

"A. In most respects, yes.

"Q. That includes the procurement of the right-of-way and the construction of the road?

"A. Generally —

"﹕ ﹕ Mr. Travis: We continue to object for the same reasons.

"﹕ ﹕ The Court: Overruled.

"A. Generally speaking, that is correct. . . . . . . . .

"Q. Now, Mr. Rankin, this highway you say that you have given us the information thus far about it, now, where does this highway, when it's completed, where does it begin?

"A. Oh, it begins down near New Orleans, Louisiana.

"Q. New Orleans, Louisiana, and what general direction does it run with reference to states, not as to degrees? I mean traverses what states?

"A. Oh, it comes out of Louisiana, through Mississippi, into Alabama, on up in through Virginia into Washington.

"Q. Is that Washington, D. C.?

"A. Washington, D. C., not Washington State.

"Q. So what we've got is a 4-lane highway with this strip in the middle, which on this particular property varies as I have made of your testimony from 125 feet to 225 feet in the middle of it, beginning in New Orleans, Louisiana, and running through Louisiana, Mississippi, Tennessee, Virginia, into Washington, D.C.?

"A. Yes, sir.

"Q. And that highway, of course, is designed primarily to accommodate the heavy traffic between the large cities on its route?

"A. No, this road is designed primarily to handle all traffic that sees fit to use it.

"Q. All right, sir, that being true, isn't it as a matter of practical knowledge that the great burden of traffic will be the heavy traffic between the large cities on its route?

": : Mr. Travis: We object to that. That would merely be an opinion.

": : The Court: Overruled.

. . . . . . . . . .

"Q. You've got 18 miles of roadway in Jasper County?

"A. That's right.

"Q. In other words, Jasper County land, Jasper County landowners are furnishing 18 miles of the right-of-way for this tremendous highway?

"A. Well, we're trying to acquire that much right-of-way from the people in Jasper County.

"Q. You're not trying to, you're doing it, ain't you? Where you can't buy it from them you're going to take it from them?

"A. Well, I believe that's right.

"Q. That's right, and this is one of the instances where you're taking it?

": : Mr. Travis: Now, we object to that. It's immaterial and irrelevant. . . . .

. . . . . . . . .

"Q. Let's talk about this road some more. From the beginning of it in New Orleans to the end of it in Washington, or if you want to begin from the other way, from the beginning of it in Washington to the end of it in New Orleans, do you know of one acre of land or one grain of sand that the states that it goes through, or the Federal Government, owns that the road will go across?

"A. You're covering too much territory. Let's get back in Mississippi or back in Jasper County on this project, and then I can—

"Q. Well, first you can answer do you know of any? You may not know.

": : Mr. Travis: We are objecting.

": : The Court: Overruled.

"A. I have no knowledge and have no reason to know if they owned a hundred acres of the right-of-way, I wouldn't know about it up in Alabama.

"Q. But that's not the question. Do you know of any that they own?

"A. I have no reason to know, wouldn't be any way for me to know either if they did or didn't.

"Q. I still didn't — I still don't get an answer to my question.

": : The Court: Let's answer the question. You either know or don't know.

"Q. Do you know of one acre of land or one grain of sand that the Federal Government or the State Government owns that this road will be put on?

"A. I don't know —

. . . . . . . . .

"Q. All right, now, let's talk about your project, the part you are familiar with. From the beginning to the end of the project you are familiar with, do you know of one acre of land or one grain of sand that this road's going over that the State or the Federal Government owns?

"A. Yes.

" : : Mr. Travis: We continue to object.

" : : The Court: Overruled.

"Q. All right, sir, so to put this road down in place through all these hundreds, many hundreds of miles between New Orleans and Washington, what the governments has got to do is get the right-of-way from the landowners, isn't it?

" : : Mr. Travis: We continue to object so far as the Federal Government is concerned.

" : : The Court: Overruled."

At the conclusion of the cross-examination, the Commission made a motion to exclude all the testimony of Mr. Rankin insofar as it showed any interest the Federal Government might have in the cost of and the maintenance of the road, the Federal Government not being any party or petitioner or plaintiff in this cause, and said motion was overruled by the court.

The next witness introduced by the Commission was Mr. J. W. Morgan, an appraiser employed by the Mississippi State Highway Department. On cross-examination the following occurred:

"Q. And when you appraise a piece of land and come in and testify as to how much a jury ought to give a man, you've got to satisfy, in this particular

case, you've got to satisfy both the State Government and the Federal Government, haven't you?

": : Mr. Travis: Now, we object to the Federal Government being involved in this.

": : The Court: Overruled.

"A. I make my appraisal and they either accept it or reject it. . . . . .

. . . . . . . . . .

"Q. All right, but now the Federal Government has to be satisfied with your appraisal before they will pay their 90 percent cost of these appraisals?

": : Mr. Travis: Now, we object to that. That's bringing the Federal Government into this case.

": : The Court: Yes, sustained, gentlemen, that's too far—

"Q. All right, but the Federal Government does pay a part of it, doesn't it?

": : Mr. Travis: We object to that.

": : The Court: Overruled.

"A. If they concur in the appraisal, yes, sir.

": : Mr. Travis: We move to exclude the answer of the witness.

": : The Court: Overruled.

"Q. That's what I'm talking about. Your answer was if they concur in the appraisal.

"A. Yes, sir.

"Q. Now, don't that get right back to what I'm talking about, that you have to satisfy the Federal Government as well as the State Government?

"A. Of course, I would say that, we don't always—

"Q. Now, just answer my question, please.

"A. If we get their percent of the pay.

"Q. That's what I'm talking about, Mr. Appraiser, they've got to be satisfied if they pay their part of the cost?

"A. Yes, sir.

": : Mr. Travis: Objection.

": : The Court: Overruled.

"Q. So in reality, when we get right down to the bottom, when we take the cover off and look at the light, what you're doing is making your appraisal and making them so they will satisfy your employer, who is the State Highway Department and the Federal Government, who is paying 90 percent of the cost, if they concur in the appraisal?

": : Mr. Travis: We object to that for the same reasons.

": : The Court: Overruled.

"Q. Now, at that time had you contacted Bill Deavours or any members of the Deavours family to get permission to go on that land?

": : Mr. Travis: We object to that.

": : The Court: Overruled.

"A. No, sir, I did not.

": : Mr. Travis: We move to exclude the answer.

": : The Court: Overrule the motion. It's competent, Mr. Travis, to ask him that as well as some of these other questions.

": : Mr. Travis: The statute has fixed it, Judge, where they have a right to.

": : The Court: All right, you may interrogate the witness, if you choose to do it, by way of rebuttal to the testimony in response to questions of counsel for the parties defendant, but so far as asking the witness the question and him being permitted to testify, it's competent, and that's the reason the court overruled your objections and your motion.

": : Mr. Travis: Okay.

"Q. When was this case started, Mr. Appraiser?

"A. I do not know the exact date. I appeared here last fall sometime.

"Q. What does it say here as to when it was filed?

"A. 11-1-63.

"Q. That was a long time after you was on this land, wasn't it?

"A. Yes, sir.

"Q. And there hadn't been an eminent domain case started and there hadn't been any instrument signed by the Deavourses then or now either giving the highway any rights on there, had there?

": : Mr. Travis: We object for the same reasons heretofore assigned—

": : The Court: Overruled.

"A. No, sir.

"Q. And when you went on there in April of 1963, without having sought or obtained permission from either of the Deavours who are named as defendants and who are the owners of this land, what were you when you went on there?

": : Mr. Travis: We object to that for the same reasons heretofore assigned.

": : The Court: Overruled.

"A. I was an appraiser for the Highway Department.

"Q. And were you a licensee, or were you a trespasser?

": : Mr. Travis: Object to that for the same reasons heretofore assigned in this record.

": : The Court: Sustain the objection except he may testify by what authority he went on there, and then it might be construed what he was.

"Q. Now, by what authority did you go on there?

"A. I was sent as a representative of the Mississippi State Highway Department.

"Q. I didn't ask you who you were sent by or as what representative, I asked you by what authority you had to get on the private land without having sought or obtained permission from the landowners.

": : Mr. Travis: We continue to object for the same reasons.

": : The Court: Overruled.

. . . . . . . . . .

"Q. Well, when you get through, I want you to show me that authority. I have been practicing law for 25 years and I want to learn something.

"A. I'm no attorney, but I have attorneys representing me.

"Q. Yes, sir, and would you get them to show me where that gives you any right to get out on any man's private land without even seeking his authority or permission?

": : Mr. Travis: We object, and continue to object.

": : The Court: Overruled.

"Q. Did you even go ask the man, who is right there in Laurel, and the rest of the Deavours family, did you even ask them for permission to go. on their land?

"A. No, sir, but—

": : Mr. Travis: We continue to object.

": : The Court: Well, the objection is overruled.

. . . . . . . . . .

"Q. How are you sure he knew it?

"A. Because of the fact that he knew his land, knew the direction of the highway, it has been staked out for five years.

"Q. Huh? How did you know that he knew it?

"A. I don't recall the exact instance that maybe we are discussing —

"Q. I'm not talking about maybe or perhaps, I want to get right down to the true facts. What I want to know is if you had any right on that land, and if you did, where you got it?

"A. All I know is I go on all lands for the State that's staked for highway purposes.

"Q. You must figure that you're a tremendously privileged character merely because you draw a paycheck from the State Highway Department.

": : Mr. Travis: We object to that.

"Q. Now, you say you went on this land?

"A. Yes, sir.

"Q. Spent a half a day?

"A. At that time.

"Q. How much have you spent since then?

"A. Approximately a day.

. . . . . . . . .

After the Commission rested, the defendant, among other witnesses, introduced one of the co-owners, Mr. Bill Deavours, and on direct examination the following occurred:

"Q. I believe there's a graveyard on it, isn't there?

"A. Yes, sir, there's a graveyard down right next to the public road.

"Q. You all permit the graveyard and are glad for the graveyard—

"A. Oh, yes. I got—Mr. Arledge there in Laurel contacted me about it, oh, back last summer, I guess, or back last spring, and he wanted to fence it up, or his uncle did, and clean it off, and of course, I told him it was perfectly all right to do it.

"Q. Perfectly all right to do it. Did they try to buy the cemetery plot?

"A. He did ask me about buying it, and I told him that I wasn't particularly interested in selling, I had no objection to them using it.

": : Mr. Travis: We object. We don't think that's material or relevant.

": : Mr. McFarland: It's a history of the land, if the Court please.

": : The Court: Overruled.

"Q. Go ahead."

While the following testimony by Mr. Deavours was not objected to, it could only tend to prejudice the jury:

"Q. What's going to happen to this 22 hundred dollars worth of timber that's on this right-of-way?

"A. Well, I—it's not mine, they take it with the right-of-way. I had — it was sold, as I understand it, by the contractor, and I was contacted last week about —by the person that bought it.

"Q. In other words, the Highway Department or their agents or employees have sold your timber to somebody else?

"A. That's what I was told, yes, sir.

"Q. Have you received any benefit from the value of the timber, or will you receive anything from the timber itself?

"A. No, sir.

"Q. In other words, that's lost, am I right?

"A. Yes, sir."

Of course, we would not reverse with this evidence to which no objection was made, but we include it as showing the general trend of the trial.

At the conclusion of all the evidence, the Highway Commission made a motion for a mistrial for the reason that the court had allowed and permitted over the objection of the petitioner evidence as to the Federal Government participating and also over the objection of the petitioner the proposition as to Mr. Morgan, the appraiser for the Highway Commission, being a trespasser in that he did not secure permission or consult with any of the defendants before going upon the land. This motion for a mistrial was overruled by the court.

Stress is laid upon the fact that there was a sign or signs upon the highway showing the participation of the Federal Government, but we fail to see where such signs authorized the emphasizing of such fact by evidence before the jury. All of this evidence hereinbefore quoted could only have tended to prejudice and bias the jury against the Highway Commission. █ Everybody, including the Highway Commission, is en-

titled to a fair trial. ▆▆ ▆ Therefore, the case is reversed and remanded for another trial.

Reversed and remanded.

*Kyle, P. J., and Gillespie, Rodgers and Brady, JJ.,* concur.