Mississippi State Highway Commission *v.* Hall, et ux.

No. 43495 April 26, 1965 174 So. 2d 488

*Pack and Ratcliff,* Laurel, for appellant.

*Melvin, Melvin & Melvin,* Laurel, for appellees.

BRADY, TOM P., J.

This is an appeal from a final judgment of the Circuit Court of the Second Judicial District of Jones County affirming the county court's judgment in the sum

of $30,307.50 with a remittitur in the sum of $3,307.50, which was rendered in an eminent domain case arising from the acquisition of the right-of-way for the construction of Highway 59 in said county. The remittitur was timely accepted and entered by the appellees and it is from the judgment of $27,000 that the Commission appeals. Stated as briefly as possible, the dominant and pertinent facts in this appeal are these:

The appellees owned an irregular shaped parcel of land containing 87.54 acres, hereinafter designated as 88 acres, which was situated approximately two miles north of the present north boundary line of the city of Laurel by roadway. It is also situated between 300 to 400 feet from the nearest highway. It is cutover land, some of which is in the Tallahala swamp, through which Tallahala Creek runs. It is estimated that 10 to 15 acres of this tract lie west and north of Tallahala Creek. The land does not abut on any regularly used public road. The closest portion of said land to a public road is the southeast corner, which is around 300 to 400 feet west of U. S. Highway 11.

The only means of ingress and egress to this land by the appellees was obtained over an unimproved road, which was an old abandoned road, which stretched across one or more neighbors' property and had not been utilized as a road for a long period of time. This was a woods road and appellees claim that it came within 100 feet of the southeast corner of their land. The appellees do not live on this parcel of land, but live some distance therefrom on land bordering on Highway 11, consisting of some 300 or 400 acres.

The record discloses that there are no improvements on appellees' 88 acre tract whatsoever, except that there are signs of an old fence on the southern boundary line, and on the north boundary line there is an old fence which is in need of repair. The land has not been in cultivation for approximately forty years. Six or seven

years prior to the trial of this case the merchantable timber and also the pulpwood had been cut from the land but, since that time, there has arisen a scattering growth of small pulpwood which averages about two units per acre in the best part, totaling in all not more than eighty or ninety units over the entire tract, which has a stumpage sale value of around $2 per unit.

The record discloses that there are no dwellings of any kind or character on this land, no lakes or ponds, no cattle pastures, and no roads, save some old woods roads, or logging roads. The record fails to disclose that this land had been put to any worthwhile use or that any monetary benefits had come to the appellees from the use of this land. The record discloses that the appellees paid in cash $3,000 in 1956 for the entire 88 acres. Appellee Hall, however, urges that because of advice which he gave Mr. Haynes, one of the stockholders of the Holiday Inn, Inc., from whom he purchased the 88 acre tract, and information furnished with reference to construction costs and problems incidental to the erection of the Holiday Inn, and also because he gave him estimated replacement damages for insurance claims because of fires which Mr. Haynes had sustained to his home and to a store which he owned in Ellisville, Mississippi, he was entitled to compensation of $14,000 to $15,000, which Mr. Haynes took into consideration when he sold him the 88 acres for the sum of $3,000. The record fails to disclose the names of any shrubs, flowering or otherwise, on this land. Not even a plum thicket, persimmon or hickory nut tree is shown to be on this 88 acres. There is no pasture land, but only hills and valleys. There is no means of passage over Tallahala Creek or through the swamp and overflow land adjacent thereto by way of bridge or footpath.

The record shows that this right-of-way will enter the 88 acre tract near the southeast corner thereof,

slanting in a northeast direction varying in width from 450 to 480 feet, and will contain in the right-of-way proper 10.54 acres. The right-of-way of Highway 59 will separate 57 acres of appellees' land which will lie to the north and west of the right-of-way, and approximately 20 acres will be cut off to the east of the right-of-way. Interstate Highway 59 will be a limited or non-access highway through this land. The record discloses that the construction of the right-of-way and highway will not alter or change the present drainage of the appellees' property. It is undisputed that the 57 acres will be severed from the rest of the land by the construction of the highway and that the nearest public road to the 57 acres will be 4,300 feet south. From an exchange at the south, there will extend northward a frontage road parallel to Interstate Highway 59 which ends 1200 feet from appellees' south boundary line.

The 88 acres, prior to the time the right-of-way of Highway 59 was staked therethrough, did not abut on present U. S. Highway 11, and the property did not have any public road leading into or out of the 88 acres. Highway 11 was located, at the closest point, about 400 feet from its southeast corner. To have constructed a road into the 88 acres, the appellees would have had to cross the lands of two or more neighbors whose property adjoins or is located near appellees' property. The roadways from U. S. Highway 11, toward the appellees' property, over the property of his neighbors, will not be disturbed in any manner except that they will be closed at the interstate right-of-way.

The appellant urges that the circuit court erred in affirming the lower court's judgment, even in its reduced amount, because the verdict was grossly excessive against the overwhelming weight of the evidence, and evinced bias, passion and prejudice. Appellant urges further that the circuit court erred in affirming the judgment, because of inflamatory remarks made by ap-

pellees' attorneys in the summation to the jury; that the court erred in admitting evidence of the sale price of non-comparable property; and, finally, that the court erred in not reversing the judgment because of the granting of an erroneous instruction.

The case at bar is controlled by the principles announced in the following cases: State Highway Com'n v. Ratcliffe, 251 Miss. 785, 171 So. 2d 356; Green Acres Memorial Park, Inc. v. State Highway Comm'n, 246 Miss. 855, 153 So. 2d 286 (1963); State Highway Comm'n v. Colonial Inn, Inc., 246 Miss. 422, 149 So. 2d 851 (1963); State Highway Comm'n v. Stout, 242 Miss. 208, 134 So. 2d 467 (1961); McDuffie v. State Highway Comm'n, 239 Miss. 518, 124 So. 2d 284 (1960); State Highway Comm'n v. Valentine, 239 Miss. 890, 124 So. 2d 960 (1960); State Highway Comm'n v. Brooks, 239 Miss. 308, 123 So. 2d 423 (1960); State Highway Comm'n v. Pittman, 238 Miss. 402, 117 So. 2d 197 (1960); State Highway Comm'n v. Taylor, 237 Miss. 847, 116 So. 2d 757; aff'd with remittitur after new trial, 240 Miss. 1, 124 So. 2d 684 (1960); State Highway Comm'n v. Rogers, 236 Miss. 800, 112 So. 2d 250 (1959); State Highway Comm'n v. Hillman, 189 Miss. 850, 198 So. 565 (1940).

Since the granting of the erroneous instruction requires reversing and remanding this cause, it appears wise to comment briefly on other errors which can also be avoided on a retrial of this case. The instruction complained of is as follows:

The Court instructs the jury for the defendants that just compensation in cases involving a partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers, including a diminution in value of the remainder by reason of the lawful use to which the portion acquired will be put. The owner of the land is not restricted to the recovery of damages to the remainder from

the taking of a part thereof, but is entitled to recover all special damages that may result to the remaining land from the public use to which the part taken is put.

■■ ■ Appellees are incorrect when they state that appellant did not complain of this instruction in its assignment of errors to the circuit court because it was specified in the assignment of errors by the appellant and was treated in appellant's brief filed in the circuit court. An analysis of this instruction reveals that it is the composite of dicta and statements in two cases heretofore decided by this court. In the Colonial Inn case will be found the first half of the instruction now under consideration, which is as follows:

"The just compensation in cases involving a partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers, including a diminution in the value of the remainder by reason of the lawful use to which the portion acquired will be put. . . ." (246 Miss. at 432.)

Beginning with the words "just compensation," the first half of the instruction is verbatim with a part of the quotation. This quotation was cited by Justice Ethridge, who spoke for the court and who stated in the Colonial Inn case that the principle universally applied in other states and which is in accord with the decisions in this state is summarized in Jahr, Eminent Domain sec. 50 (1953). That part which was not quoted in the first half of appellees' instruction, but which appears in the Colonial Inn case, consists of these concluding words: "Anything less than the foregoing would encroach upon the constitutional guarantee of just compensation." With that sentence the citation from Jahr's treatise on Eminent Domain is complete as it appears in the Colonial Inn case. That this is one interpretation of the rule with reference to just compen-

sation cannot be disputed, but the interpretation, if it is to be used as an instruction, must stand alone and cannot be used jointly with the basic "before and after taking" instruction which is universally recognized as the criterion for damages. The explanation which Author Jahr advances simply treats in a different manner the same elements of the "before and after" rule. In passing, the Colonial Inn case was extraordinary in that only a narrow strip of land was taken off of the street side of a tourist court, and the usual damage generally present in eminent domain suits was lacking. The dicta in the Colonial Inn case should not have been woven into the instruction now being considered. The appellees had already obtained ample instructions, including the customary "before and after taking" instruction, and the granting of the first part of the instruction complained of constitutes reversible error.

██ █ The appellees compounded the error by adding to the quotation from Jahr a portion of the opinion in the Hillman case, which is as follows:

The owner of the land is not restricted to the recovery of damages to the remainder from the mere taking of a part thereof, but is entitled to recover all special damages that may result to the remaining land from the public use to which the part taken is to be put. (189 Miss. at 868.)

This is the language of Chief Justice Smith, who was endeavoring to state tersely and clearly the same basic rule which was restated by Justice Ethridge when Jahr was quoted in the Colonial Inn case. This referred to the fact that the owner of the land was not restricted to the recovery of damages to the remainder from the mere taking of a part thereof, but was entitled to recover all special damages that may result to the remaining land from the public use to which the part taken is to be put. It cannot be doubted that the statement in the second part of the instruction likewise states

an accurate rule of law, but the trouble is that there is again a duplication presented by the use of the second part of the instruction, just as was true of the first part.

 ■ ■ While both parts of the instruction are correct statements of the law and substantially announce the same rule, nevertheless it was improper to instruct the jury for the appellees on the "before and after taking" rule and then in addition instruct in accordance with either the first or second part of the instruction under question. This is true because to do so would lead the jury into believing that after they had determined the "before and after" value they could also take the diminution in the value of the remainder into consideration, as stated in the Colonial Inn case, and as special damages, as set out in the Hillman case. The "before and after" rule swallows and absorbs all of the damages of every kind and character, and while it is proper to put on evidence of special items so that the jury can properly determine the "after" value, it is not proper to comment on any particular aspect of the damages in the instructions. Few, if any, attorneys are immune from the occupational hazard of committing errors in drafting of instructions. Particularly is this true when the instructions are prepared under pressure of time or in the crisis of a trial, when cool, analytical chambered reflection is improbable. Apparently this occupational mischief has again occurred here. In the hope that it may be avoided in the future, we point out that there is a lucid discussion in the Stout case of the error in presenting to the jury an instruction such as is under consideration here. In the Stout case the court, speaking through Justice Gillespie, made this succinct synopsis of the pertinent rule of law:

> The before and after taking rule is the ultimate measure of damages. It is not proper to prove as a separate item of damage any item, quality or specific

injury; but this does not mean that a witness may not testify concerning any specific quality, item, or specific injury which affects the depreciated market value. "Although every factor affecting a depreciated market value may be put in evidence, the ultimate issue is the extent of their cumulative impact upon such total valuation." Wheeler v. Mississippi State Highway Commission, 212 Miss. 606, 55 So. 2d 225. (242 Miss. at 219-20.)

In the Stout case the appellant complained of the following instruction given the appellee:

"The Court instructs the jury that the 3.17 acre strip lying South of parcel No. 3 will be inaccessible and of no value to Stout and the Court tells you that you may take into consideration the damages to this property (tho not taken by Highway Dept.) in fixing the value of Stout's property after the taking of this property . . ." (242 Miss. at 221.)

Aside from the fact that it was error to tell the jury that the land would be of no value to the appellees, the instruction was also improper because, as was graphically pointed out in the Stout case, it tended to authorize the jury to award appellees damages for the severance of the 3.17 acres of land as a separate item of damage, and because it singled out and gave undue prominence to this element of damage, this Court held in the Stout case that the contention of the appellant was well taken, and stated as follows:

"It should repeatedly be emphasized that subjects which are relevant as testimony are not thereby appropriate for instructions. Although every factor affecting a depreciated market value may be put in evidence, the ultimate issue is the extent of their cumulative impact upon such total valuation. When they are made subjects of special comment in instructions, there is not only a violation of Code of 1942, Section 1530, but this results in duplication of damages. . . .

and the procedure in this sort of case would be simpler and safer if the juries could be instructed that the damage is to be computed upon the basis of the difference between the fair market value of the entire property affected before and after the taking. The several items of damage should be left to the fields of testimony and argument." Wheeler v. Mississippi State Highway Commission, 212 Miss. 606, 55 So. 2d 225. (242 Miss. at 221-22.)

It is obvious, therefore, that the granting of this instruction was error and, for this reason, the case must be reversed and remanded.

 █ In addition, however, to this instruction, there are other errors present which should not be committed on a retrial of this case. These errors, briefly, are as follows: The inflamatory arguments which were stated by counsel for both appellant and appellees in their summations to the jury should not have been made and, of course, do not offset each other. While the error was not as flagrant as was committed in State Highway Commission v. Deavours, 251 Miss. 552, 170 So. 2d 639 (1965), nevertheless we pointed out in that case that the error related to evidence which was introduced and which was calculated, and could have been offered for no other purpose than to bias and prejudice the jury.

 ██ Statements of counsel for both appellant and appellees at bar, which were made to the jury, could not have been uttered except for the purpose of inflaming the jury. The statements of appellant's attorney related to taxpayers and applied to the jurors as taxpayers, whose money would be spent in locating the highway. The statements made by appellees' attorney related to the fact that "they do not let a jury say how much will be sent off to foreign countries." The desired result of these statements was that the minds of the jurors would be inflammed and prejudiced. Such

summation is outside the record and has no proper place in presenting to a jury the basic question of damages sustained in an eminent domain suit. We do not have to pass upon this assignment of error insofar as the reversal of this case is concerned, and do not do so, except that we condemn the use of inflamatory language calculated to mislead the jury and which has no relation to the issues of fact which are being presented to the jury for determination.

■■ There is merit in the contention of the appellant that the verdict is grossly excessive and evinces bias, passion and prejudice. This is true largely because the jury was permitted to consider the evidence of sales price of non-comparable property. In the Rogers case this Court pointed out that it was reversible error to admit evidence of the adaptability of land to a particular purpose where no immediate need or prospect of its being used for such purpose was disclosed by the evidence.

■■ In the Green Acres Memorial Park case it was likewise pointed out that the jury could not consider a special purpose for which a particular owner expects to use land, in determining the fair market value.

■■ The rule in these two cases seems to have application here, in spite of the fact that in the Brooks case the facts did justify the finding that the property was extremely valuable because it could be divided into small building sites. The facts, however, in the Brooks case distinguish it clearly from the facts in the case at bar. In the case at bar the parcel of land is not adjacent to the corporate limits of a municipality, and the municipality is not expanding toward it; we have wild lands, and the record shows that there has been little or no home building activity in the vicinity of appellees' land for about twenty years. Furthermore, there is a creek and swamp land situated on a part of this property.

There are no improvements whatsoever, and no public roads. There is no use to which this land has been put since the appellees have owned it, which could put it in the category of land comparable to that considered in the Brooks case, or the Houston Estates land. The Holiday Inn and the Magnolia Motor Hotel are both located adjacent to U. S. Highway 11, a heavily traveled turnpike, and they were both purchased by motor court promoters for that particular and specific commercial use, because of the proximity to heavy highway traffic. The use of comparisons of these parcels of land to the appellees' land, together with the comparison made with the Bruce Lumber Company's holdings, was misleading and confusing to the jury. The distinctions between the Houston Estates, located adjacent to a subdivision just north of Laurel, and appellees' land, as reflected in this record, are apparent; and the distinctions between appellees' land and the land in State Highway Commission v. Hoss, (Miss.), 172 So. 2d 764, urged by the appellees as justification for the use of the Houston Estates as being comparable to the appellees' land, has little merit. While a per curiam opinion was handed down in the Hoss case, the record nevertheless discloses that the land owned by Hoss was highly developed with many improvements, and was far more comparable to the Houston Estates than is the land of the appellees in the case at bar. Mr. Hoss' 70 acres were divided, 27.7 acres being on the west, and 25.6 acres on the east of Highway No. 59. 16.41 acres were taken for the highway proper. Mr. Hoss' substantial home was on the land. There were improvements such as a barn, silo, a tenant house, pump house, feeding bins, and cattle. His land had fifty acres in pasture lands, and twenty acres in merchantable timber. There were five ponds or lakes, three of which were destroyed by the taking. The Hoss land is more comparable to

the Houston Estates, and the verdict in the Hoss case was for $23,000, while the verdict in the case at bar is for $27,000. The facts in State Highway Commission v. Saul, (Miss.), 173 So. 2d 916, show it to be far more comparable to the case at bar than the Hoss case or the Houston Estates property.

██ ██ We have most carefully read the record and studied the briefs of counsel, and we are driven to the inescapable conclusion that the prodigal verdict of the jury does not have any rational basis, under the competent evidence presented in this case, upon which to rest. A verdict must not be so grossly excessive as to evince bias, passion or prejudice, but on the other hand must be based on competent facts, not on conjecture, supposition, or mere possibilities. On a retrial the appellees can utilize in their proof land which is more comparable for establishing values, and the errors of this trial can be avoided. We are forced to reverse and remand this cause.

Reversed and remanded.

*Lee, C. J., and Ethridge, Gillespie and Inzer, JJ.,* concur.