529 So.2d 896 (1988)
MISSISSIPPI STATE HIGHWAY COMMISSION
v.
E.S. VIVERETTE.
No. 57824.
Supreme Court of Mississippi.
July 20, 1988.
*897 John M. Huff, Forest, Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Kenneth S. Crawford, Sr., Asst. Atty. Gen., Jackson, for appellant.
Jerry L. Bustin, Forest, for appellee.
Before PRATHER, ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
This is an eminent domain case arising out of a highway relocation project in rural Scott County, Mississippi. The Highway Commission is taking a thirty foot strip across the frontage of landowner's property, some one-fourth of an acre in the aggregate. The jury awarded $10,000.00 in compensation to the landowner. This is simply too much, given the facts of this case. We reverse and remand for a new trial.

II.
Prior to August 7, 1985, E.S. Viverette owned a parcel of land approximately 9.85 acres in size fronting on State Highway 21 in Scott County, Mississippi. Viverette had purchased the property from Rex Dolan in September of 1982 paying $15,000.00. Viverette had done some clearing and fencing but no construction of any kind.
On August 7, 1985, the Mississippi State Highway Commission (MSHC) commenced these eminent domain proceedings by filing its application in the Circuit Court of Scott County, Mississippi. The taking is described as a thirty foot strip across the eastern right-of-way of Highway 21 being a distance of 347.7 feet in width, some 0.24 acres in size.
MSHC's initial statement of value filed November 22, 1985, suggested the fair market value of the property condemned at $375.00, plus damages to the remainder at $1,725.00, for a total compensation and damage due of $2,100.00. Miss. Code Ann. § 11-27-7 (1972). The damages to the remainder were largely attributable to the destruction of a tier-beam wood and metal fence with a steel wedged archway which had been placed across the highway frontage by Viverette's predecessor in title, Rex Dolan.
While the case was pending, a highway department civil engineer, Franklin A. Greer, Jr., surveyed the property and determined that all except a 30 foot strip of *898 the fence was located on the preexisting highway right-of-way. Accordingly, on February 20, 1986, MSHC filed an amended statement of values declaring damage to the remainder as only $450.00, reducing the total compensation and damage due Viverette to $825.00.
On the eve of trial, Viverette filed his statement of values, alleging that he was due $4,950.00. This figure was composed of a $500.00 fair market value placed on the quarter of an acre being condemned  computed at the rate of $2,000.00 per acre. Viverette said that the damages to the remainder amounted to $4,450.00.
The case was called for trial on Tuesday, August 5, 1986. The evidence regarding the fair market value of Viverette's property was not seriously disputed. Jay Dilmore, the MSHC appraiser, testified that in his opinion the fair market value of the property was $1500.00 per acre or $375.00 for the quarter acre being taken. Scott Palmer, landowner's appraiser, offered his opinion that the fair market value was $2,000.00 per acre, yielding a $500.00 fair market value of the land taken. Both appraisers agreed that the highest and best use of the property was residential and both agreed that the comparable sales or market data approach to value was the preferable approach to use in this case. In short, on the question of the value of the land taken, there was hardly enough difference to make such a federal case out of this.
On the question of damages to the remainder, Palmer testified for Viverette that taking the thirty foot strip would destroy a potential homesite because of the location of a pond at the rear of the potential homesite. He put this damage at $2,000.00. Palmer attempted to testify about damage to the fence, but this was excluded  and no cross-appeal has been taken. In the end, Palmer testified that the value of the property before the taking was $24,200.00 and that the value after the taking was $21,700.00, yielding a total damage payable to Viverette of $2,500.00.
Viverette testified in his own behalf and estimated the value of his land at $35,000.00. He too said that a two-acre homesite had been lost as a result of the taking and he attempted to value this loss at $3,000.00 per acre for $6,000.00 damages, only to have MSHC's objection sustained. He claimed $5,000.00 to replace the fence and $2,000.00 for the destruction of trees. Suffice it to say that there is little if anything in the record to support or lend credibility to the values testified to by Viverette.
MSHC real estate valuation expert, Jay Dilmore, offered his opinion that the value of the Viverette tract before the taking was $15,225.00 and that its value after the taking was $14,400.00 for a net compensation due of $825.00. The differences between Dilmore's opinion and Palmer's was that Dilmore concluded that the value of the land per acre was $1500.00 as compared to Palmer's higher $2,000 per acre fair market value, and Dilmore proceeded on the assumption that only thirty-one feet of the rail fence with two strands of barbed wire were on Viverette's property  the remainder being on the highway right-of-way.
Greer, the MSHC surveyor, testified regarding the location of the fence and gave his opinion that most of it was already on the highway right-of-way. Greer's view was strongly attacked by landowner. No competent counter proof, however, was offered on the subject, a point about which we will say more later.
In this state of the proof, the matter went to the jury who returned a verdict fixing the compensation and damages due Viverette at $10,000.00. Judgment was entered thereon on August 22, 1986.
MSHC timely moved for a new trial charging, inter alia, that the verdict was contrary to the weight of the evidence and grossly excessive and evincing bias, passion and prejudice and, further, that the verdict exceeded the statement of values filed by Viverette. After a hearing thereon, the motion was overruled. MSHC now prosecutes this appeal charging error on the overruling of its motion for a new trial.

III.
MSHC first argues that the Circuit Court erred when it allowed the $10,000.00 verdict *899 to stand in the face of landowner's $4,950.00 statement of values filed August 4, 1986.[1] MSHC argues that a landowner is bound by his statement of values and may not recover compensation in excess thereof.
Miss. Code Ann. § 11-27-7 (1972) requires that both MSHC and the landowner file separate statements of values and provides further that the statement of value shall
constitute the pleadings of the parties with respect to the issue of value, and shall be treated as pleadings are treated in civil cases in the circuit court.
Since the statute was enacted, however, the office of pleadings in our civil practice has changed  and has been diminished. See Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 505 (Miss. 1985). Our case law construing Section 11-27-7 by and large lies before January 1, 1982, and the advent of the new view of pleadings.
For example, in Coleman v. Mississippi State Highway Commission, 289 So.2d 918 (Miss. 1974), the Court noted that prior to the enactment of Section 11-27-7, the pleadings were few in eminent domain cases. The Court stated,
In many instances this scarcity left both the condemnor and the condemnee in a dilemma as to the values which would be elicited from the witnesses in the cause, the situation lending itself to a swearing contest without value limitations... . One of the purposes of the enactment of [11-27-7] was to eliminate this quandary.
Coleman v. Mississippi State Highway Commission, supra, at 920.
Amendments were allowable but not where they would operate to the prejudice of the condemnor. See Coleman, supra, and Mississippi State Highway Commission v. Amos, 319 So.2d 231 (Miss. 1975). In Tysons, Inc. v. Mississippi State Highway Commission, 367 So.2d 939 (Miss. 1979), the Court took a strict view of the office of pleadings and found a fatal variance between the Highway Commission's statement of values, and its proof, where the Commission's appraiser testified that the landowner's damages were less than those claimed in its statement of value. There was no reason on principle why, under the Tyson view, the landowner should not have been similarly bound.
The word "pleadings" in Section 11-27-7 takes it meaning today from the view and function of pleadings as embodied in the Mississippi Rules of Civil Procedure. Our long post-1982 expression authorizes the condemnor to amend quite radically its original statement of value. State Highway Commission of Mississippi v. McDonald's Corp., 509 So.2d 856, 863 (Miss. 1987). Even post-January 1, 1982, the statements of value  as pleadings  frame the issue on the question of compensation due. Before either party may complain of variances therefrom, timely objection must be tendered when the opposition seeks to exceed the statement of values. Failure of objection results in waiver of the point, as is the case with other pleadings and where issues not properly pled may be regarded as tried by consent. See Norris v. Norris, 498 So.2d 809, 812 (Miss. 1986); Johnson v. Franklin, 481 So.2d 812, 815 n. 4 (Miss. 1985).
In today's case there was no violation of the statement of values in the testimony of landowner Viverette's first two witnesses, Rex Dolan, his predecessor in title, and valuation expert Palmer. The latter originally attempted to offer a before and after compensation value of $4,950.00.
The only remote suggestion in this record that Viverette is due more than the $4950.00 figure on his statement of values came in his own testimony where he first said his property was worth $35,000.00 before the taking and then began to itemize deductions to establish the after value. But when Viverette offered opinion that two of his acres had been rendered unusable as a homesite and offered the view that *900 these were valued at $3,000.00 an acre, the Circuit Court sustained MSHC's objection on grounds that "he's not qualified." Viverette did testify that it would cost "about $5,000.00" to replace the fence and added that the one-fourth acre taken was worth $750.00, but when he added a $2,000.00 estimate for loss of his trees, the Court held this could not be offered
as a special element of damages. It can be admitted into evidence as to enhance the overall value of the property.
Viverette also claims "aesthetic damage to the whole by taking landowner's beautiful frontage of lined oak trees." Brief of Appellee, p. 9. We remind him that aesthetic value per se is not compensable. Aesthetics enter into an eminent domain proceeding only insofar as they affect the fair market value of property and  as a matter of common sense  a beautiful frontage of lined oak trees could affect the fair market value of residential property. The point for the moment is that certainly no independent damages are payable as a result of the destruction of the oak trees. Rather, matters such as that must figure into the overall before and after calculations of the valuation experts. See Trustees of Wade Baptist Church v. Mississippi State Highway Commission, 469 So.2d 1241 (Miss. 1985).
In short, Viverette never offered clear and unequivocal  and admissible  testimony that the loss to his property exceeded the $4950.00 shown on his statement of values, nor when he flitted around in the area did MSHC make a specific objection on the grounds that it was exceeding the statement of values. In the end, we need not resolve the matter foursquare, as there is a more fundamental problem with the verdict in this case.

IV.
MSHC challenges the size of the jury's compensation award. Technically, MSHC argues that the Circuit Court abused its discretion when it overruled so much of MSHC's motion for a new trial as sought a new trial on grounds that the compensation award was excessive and contrary to the weight of the evidence.
Our scope of review is the same in eminent domain cases as in other cases where we are asked to reverse a trial court for its denial of a motion for a new trial. We reverse only where the trial court has abused his discretion. See Anchor Coatings, Inc. v. Marine Industrial Residential Insulation, Inc., 490 So.2d 1210, 1215 (Miss. 1986); Clayton v. Thompson, 475 So.2d 439, 443 (Miss. 1985); Mississippi State Highway Commission v. Hancock, 309 So.2d 867, 871 (Miss. 1975).
Trial courts faced with such motions in eminent domain cases operate under familiar principles. The compensation award may not be so grossly excessive as to evince bias, passion or prejudice; it must be based on competent facts, not on conjecture, supposition or mere possibilities. State Highway Commission of Mississippi v. Havard, 508 So.2d 1099, 1104 (Miss. 1987); Mississippi State Highway Commission v. Hall, 252 Miss. 863, 879, 174 So.2d 488, 495 (1965).
Courts should be particularly loathe to disturb a jury's eminent domain award where, as here, the jury has personally viewed the premises. State Highway Commission of Mississippi v. Havard, 508 So.2d 1099, 1105 (Miss. 1987); Mississippi State Highway Commission v. Terry, 288 So.2d 465, 466 (Miss. 1974). We have gone so far as to suggest that, where the jury has viewed the property being taken, any substantial evidence in the record supporting the jury's damage assessment will preclude reversal. Mississippi State Highway Commission v. Franklin County Timber Co., Inc., 488 So.2d 782, 787 (Miss. 1986).
Today's is one of those rare cases, however, where we must reverse. Not one word of testimony offered by landowner's valuation expert Palmer supports an award in excess of the statement of values, $4,950.00. Nor has prior owner Rex Dolan afforded any testimony which would undergird this award. All of the evidence from the Highway Commission, of course, is to *901 the effect that the compensation properly due and payable is far less.
The case in the end turns upon whether Viverette's own testimony forms "any substantial evidence" which might legally undergird the $10,000.00 damage assessment. We hold that it does not. There is nothing in the record to show that Viverette was in any way qualified to give the values that he gave. Viverette simply fails to offer any rationale or specific facts upon which he computes his damage assessment  which, we reiterate, still does not reach $10,000.00. In the face of this state of the evidence, we hold that the Circuit Court abused its discretion when it denied MSHC's motion for a new trial.
We have considered whether the evidence is such that we might here fix the compensation due and render the case here. See Mississippi State Highway Commission v. Hurst, 349 So.2d 545, 546 (Miss. 1977). The top side of the valuation and damages testimony, however, is too uncertain to permit this course. We reverse the judgment entered in favor of Viverette and remand this case for a new trial on the question of compensation legally due Viverette upon this taking.

V.
Since the case must be retried, we address two evidentiary questions which arose at the first trial and which have been argued on appeal and which likely will recur upon retrial.

A.
First, MSHC has objected to Palmer's reliance upon two allegedly comparable sales because he did not have the specific dates of those sales. MSHC argues that permitting evidence of sales after the taking would be error in that such sales would mislead the jury. We disagree.
In an eminent domain action, the court seeks the fair market value of the property as of the date of the taking. See Leflore v. Mississippi State Highway Commission, 390 So.2d 284, 286 (Miss. 1980). But this does not mean that comparable sales used by a competent valuation expert in establishing his opinion of fair market value must be on the same day. Of course, no one objects to the use of comparable sales occurring before the date of the taking, so long as those sales are not too remote in time to have evidentiary value. By the same token, it hardly seems reasonable that there should be any basis for objection to sales taking place after the date of taking but before trial. On what rationale might we admit a comparable sale occurring three months prior to the taking and exclude one occurring three months after the taking? The question answers itself. Real estate markets are hardly static. Sales occurring after the taking are in fact and as a matter of common sense as relevant as sales occurring before. Competent appraisal and valuation experts should be expected to use and adjust both before and after comparable sales so that they form a reliable indication of value at the date of the taking.
We hold that the fact that a comparable sale an appraisal or valuation expert witness purports to rely upon occurred after the date of the taking, constitutes no per se basis for objection to its admissibility in evidence or to the valuation expert relying upon it and forming his opinion of value, so long as the valuation opinion ultimately given is the value of the property taken on the date of the taking.

B.
Much dispute arose below and in the briefs regarding the surveying testimony about the location of the fence at the time of the taking. MSHC's civil engineer, Franklin Greer, testified that all except thirty feet of the fence were on the preexisting highway right-of-way. Viverette offered Dolan to testify that he had the property surveyed and put the fence down consistent with that survey and, specifically, that he put it on his property or right on the property line.
Insofar as Dolan's testimony gave the results of a prior survey, it was hearsay. The testimony was quite clearly offered to establish the substantive truth of *902 the results of the prior survey. In that the surveyor was not called and subject to cross-examination, the testimony should not have been admitted. More to the point, on retrial the Circuit Court should scrupulously regard the hearsay rules found in Rules 801, et seq., Miss.R.Ev. Moreover, witnesses such as Dolan should be limited to testimony regarding matters within their personal knowledge. Rule 602, Miss.R.Ev.
On the other hand, Viverette has strenuously objected to Greer's opinion regarding the location of the preexisting highway right-of-way. Greer's testimony was that he assumed a standard sixty-footwide right-of-way and that he measured from the center of Highway 21 and in this way established that most of the fence was a few inches onto the theretofore existing right-of-way. He examined no original documents and made no effort to ascertain that the highway had been laid exactly in the center of the sixty foot right-of-way.
We regard Greer's surveying methods as rather sloppy but not so bad as to render his opinion inadmissible. In view of the fact that we are talking about a matter of a few inches, and the further fact that it is quite clear that Dolan intended to put the fence on his property and not on the right-of-way and the further fact that the fence had existed there for years without objection from MSHC, it is not surprising that the jury apparently rejected Greer's testimony.
Upon retrial, Greer's testimony if it is identical is admissible, though it would still be subject to serious impeachment via cross-examination.
REVERSED AND REMANDED.
HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
ROY NOBLE LEE, C.J., not participating.
NOTES
[1] That the landowner did not file his Section 11-27-7 statement of values ten days before trial need not detain us. See Mississippi State Highway Commission v. Amos, 319 So.2d 231, 233 (Miss. 1975).