609 So.2d 1251 (1992)
Richard G. KING and Marion C. King
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 89-CC-0343.
Supreme Court of Mississippi.
August 26, 1992.
K. Maxwell Graves, Jr., Meadville, Doug Wade, Jackson, for appellant.
John R. Kingsafer, Natchez, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This inverse condemnation case presents an unusual circumstance. Rural homeowners/highway right-of-way condemnees litigated with the condemning authority and were finally paid. A few years later, their home site suffered special damages which they attribute to the highway construction *1252 project and insist were not reasonably foreseeable at the time of their original trial. They have now sued for these special damages.
The Circuit Court held the prior action precluded the present one. We affirm.

II.
Richard G. King and Marion C. King are husband and wife who, in 1965, built their home on a 3.35 acre tract they owned along Highway 84 East, east of Meadville in Franklin County, Mississippi. The Kings lived there uneventfully until 1978, when the Mississippi State Highway Commission embarked upon the relocation and reconstruction of U.S. Highways Nos. 84 and 98, State Project No. 98-0015-01-040-10. In connection therewith, the Commission filed an eminent domain action in the Circuit Court of Franklin County, taking 1.21 acres of the Kings' homestead and seeking, as well, a temporary easement over and across an additional .19 acres. The taking lay in a vacant area along the south or southeasterly side of the Kings property. The matter proceeded to trial, and on February 13, 1978, a Circuit Court jury fixed the Kings' compensation for the taking and damages at $9,500.00. The Circuit Court entered judgment on the verdict. No party appealed and, in fact, the Commission promptly paid the judgment.
As fate would have it, the Kings property was quite near to a massive overpass that connects U.S. Highway 98 with U.S. Highway 84, the construction of which required huge excavations and changes in the land. Shortly after the original eminent domain proceedings, the highway contractor embarked upon the project, moving much heavy equipment into the area. We are told without serious dispute that during the construction the grade in the highway was changed and pilings were driven. The construction caused serious vibrations, upsetting the underlying foundation of the Kings' residence. The work caused a drop in the water table, cracks in the residence foundation, basement walls, and doors, plus shifting floors and buckled walls. The Kings say their home has been seriously damaged and practically destroyed.
On August 19, 1987, the Kings commenced the present civil action by filing their complaint in the Circuit Court of Franklin County, naming the Commission as defendant. The Kings asserted an inverse condemnation theory and charged, independent of and over and above the prior action, their property had been taken and damaged for public use. The Commission answered and then by motion for summary judgment urged that the new suit was precluded by the final judgment in the 1978 eminent domain proceedings.
The Kings responded, pressing strongly their view that the present damages were not reasonably foreseeable or discoverable in 1978 and, hence, were not precluded. All agree that the construction work was done according to the Commission's plans and specifications. These plans and specs were on file with the Commission at all times leading up to the 1978 trial and were available to the Kings and their representatives. No one suggests the contractor has been guilty of negligence in the premises. In the end, the Circuit Court credited the Commission's defense and held the action precluded and entered judgment summarily in favor of the Commission and against the Kings.
The Kings now appeal to this Court.

III.
As all now know, a party is entitled to summary judgment if the legally cognizable matters before the court
show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Rule 56(c), Miss.R.Civ.P. Where, as here, the Circuit Court has granted summary judgment, we proceed de novo on appeal. See, e.g., Mantachie Natural Gas District v. Mississippi Valley Gas Co., 594 So.2d 1170 (Miss. 1992); Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss. 1991); Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988).
*1253 The entire record and course of proceedings in the prior eminent domain action before the Circuit Court of Franklin County have been made part of the present record. Those matters appeared as Docket No. 1745 in the Circuit Court back in 1978. The question today is whether the final judgment in that action precludes the present action.
Our law has long held the final judgment of a court of competent jurisdiction conclusive of questions actually contested and litigated and, as well, of all matters that reasonably might have been presented and litigated by and between the same parties. Bowe v. Bowe, 557 So.2d 793, 794 (Miss. 1990); Riley v. Moreland, 537 So.2d 1348, 1354 (Miss. 1989); Walton v. Bourgeois, 512 So.2d 698, 702 (Miss. 1987); Dunaway v. W.H. Hopper & Associates, Inc., 422 So.2d 749, 751 (Miss. 1982); Standard Oil Co. v. Howell, 360 So.2d 1200, 1202 (Miss. 1978).
In the law of eminent domain we find a special variant of this rule. In our seminal decision in Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940), we held:
The compensation awarded the landowner in an eminent domain proceeding is conclusively presumed to include all damages resulting to him from proper use of the land taken, here specifically from the proper construction of the contemplated highway.
Hillman, 189 Miss. at 868, 198 So. at 570. [Emphasis added] We have recited the rule routinely as the occasion arose. See, e.g., Muse v. Mississippi State Highway Commission, 233 Miss. 694, 720, 103 So.2d 839, 850-51 (1958). This res judicata variant is a function of our familiar "before-and-after" rule, authoritatively delineated in Hillman, where, in relevant part, we stated:
The owner of the land is not restricted to the recovery of damages to the remainder from the mere taking of a part thereof, but is entitled to recover all special damages that may result to the remaining land from the public use to which the part taken is to be put.
189 Miss. at 850, 198 So. at 570. We say this on the premise that
the "before and after" rule swallows and absorbs all of the damages of every kind and character... .
Mississippi State Highway Commission v. Hall, 252 Miss. 863, 874, 174 So.2d 488, 492 (1965).
Of importance today, we have consistently enforced this conclusive presumption in after-the-fact inverse condemnation actions. See Jackson Municipal Airport Authority v. Wright, 344 So.2d 471, 473 (Miss. 1977); Curtis v. Mississippi State Highway Commission, 195 So.2d 497, 502 (Miss. 1967); Swett v. Mississippi State Highway Commission, 193 So.2d 596, 599-600 (Miss. 1967); Mississippi State Highway Commission v. Tomlinson, 223 Miss. 623, 78 So.2d 797, 799 (1955). Swett addresses the precise question before us today and holds:
Swett's argument that he should be allowed to recover because he had no reason to anticipate damages to his land ... at the time ... [of the prior eminent domain proceedings] is not tenable ... [The prior proceedings] and release [Swett gave] ... referred to the plans for the use of the property on file with the Highway Commission [and] embraced all damages resulting from the proper use of the lands.
Swett,[1] 193 So.2d at 600.
This would seem to conclude the matter. The Kings claim a crack in the door, however, in the gas pipeline condemnation case of Berry v. United Gas Pipeline Co., 370 So.2d 235 (Miss. 1979). There is indeed language in Berry that suggests superficially that construction damage to other property may be
the subject matter of a separate law suit. The final judgment reserved this right to Berry.
Berry, 370 So.2d at 237-38. Any solace the Kings find vanishes when it is seen that United Gas had taken easements from *1254 Berry's co-tenants without acquiring an easement from Berry. United Gas and Berry, in fact, entered an agreed judgment which stated Berry's damages and reserved to him, by agreement of the parties, the right to maintain a separate suit for damages to a non-producing gas well located near the easement condemned. Nothing in Berry is inconsistent with the view we have stated above.
More troublesome, however, is certain language quoted in two of our inverse condemnation cases. In Tomlinson the Court reads from 29 C.J.S., Eminent Domain § 28, p. 1370, as follows:
Applying the principles stated above, it is the rule, subject to statutory exceptions, that the owner must recover in one proceeding all the damages which have resulted, or are likely to result in the future, from a proper construction and operation of the improvement, ... .
Tomlinson, 223 Miss. at 629, 78 So.2d at 799. [Emphasis added] We repeated the quote in Jackson Municipal Airport Authority v. Wright, 344 So.2d at 473. We question whether this implies the converse: that special damages not likely to result in the future are not precluded by the first proceeding.
On the facts, Tomlinson aids the Kings little. The Tomlinson landowner plaintiffs were complaining of damages resulting when, some three years after the taking, the Highway Department made a second elevation in the grade of the highway of approximately four feet. The Court said this was within "all damages which might reasonably result" at the original taking, because the plans and specifications of the original project mentioned a possible additional grade raising as "probable future construction." Wright was an inverse condemnation suit wherein the Jackson Municipal Airport Authority had taken an aviation easement over landowner's property. The question was whether the authority must pay the servient landowner additional damages because of increased flights by heavier, noisier aircraft after the date of the original taking. The Court held that these were damages "which were reasonably likely to result in the future from the proper use of the easement." Wright, 344 So.2d at 473.
On reflection, the special damages sought in Tomlinson and Wright were more readily anticipatable than those the Kings seek. The "likely to result" language quoted in Tomlinson and Wright impliedly leaves the door open. Our conventional res judicata cases talk of precluding "claims that were or reasonably may have been brought in the original action." Bowe v. Bowe, 557 So.2d at 794. Nor may we deny the Kings' argument has a certain equitable appeal. They say they had no reason to anticipate the damages which have occurred, nor did anyone else, and, accordingly, they had no realistic opportunity to make proof thereof. Carrying the point further, assuming they had no reason to anticipate these damages, they say there is no
identity of the subject matter of the original action when compared with the action now sought to be precluded.
Walton v. Bourgeois, 512 So.2d at 701. Had they offered to prove the possibility of the sort of damages which have now occurred, they say their proof would likely have been rejected as too speculative or remote.
There is a quick answer on this latter point. Because our constitution requires "due compensation"[2]
the presumption is that the construction will be of such character as to do the most injury to the remaining property of the landowner.
4 Nichols, The Law of Eminent Domain § 14.15, pp. 14-327 thru -329 (Rev.3d Ed. 1990). This view is a function of the policy imperative that compensation and damages be payable once and for all and not piecemeal. One policy imperative of the before-and-after *1255 rule for more than half a century has been that the landowner's entire right and the Commission's entire liability will be resolved in a single action. That rule gives the landowner substantial incentive to discover and show all special damages. If we credited the present action, it could, not insignificantly, undermine the rule. It would give disincentives where the public interest demands otherwise. The present case is legally analogous to the plaintiff in a contract action who proceeds to final judgment and then sues anew, claiming unexpected and theretofore unanticipated consequential damages. We would not give such a plaintiff the time of day. See 22 Am.Jur.2d, Damages § 682.
The Kings' plea implies practical problems. If we recognize the rule for which they contend, we accept that there will be a mini-trial on reasonable foreseeability in all such inverse condemnation cases. Though reasonable foreseeability imports an objective standard, the matter is still fraught with litigational imprecision. Beyond that, it seems likely the Highway Commission may be subject to harassment suits by Monday morning quarterbacks. To be sure, this result appears harsh to the landowner who truly had no reasonable means of anticipating damages which later occurred. And if this be so, it is to be lamented, yet accepted, as but another reminder that the legal process at its best seldom yields but a crude approximation of justice.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN and PITTMAN, JJ., concur.
BANKS, J., dissents with written opinion, joined by DAN M. LEE, P.J.
McRAE, J., dissents without written opinion.
BANKS, Justice, dissenting:
Because in my view the majority opinion does violence to the constitutional mandate that our citizens be compensated for our government's damage to their property and affirms a summary judgment entered with an insufficient development of the facts, I dissent.

I
The Kings contend that, because of highway construction five to seven hundred yards from their house, the house was severely damaged. They proposed to put on scientific evidence, not yet developed, to the effect that the water table was disturbed or altered and that because their house is constructed with a subterranean basement a "phenomena" occurred resulting in the damage. Their plan was thwarted by the insistence of the Highway Commission that our precedents dictated dismissal on grounds of, res judicata, regardless whether the damage to the house could be reasonably anticipated by any facts in evidence at the prior eminent domain proceedings. Perplexed by the issue, the circuit judge to whom the case was assigned contemplated alternate courses to a speedy consideration by this Court  denial of the motion and granting interlocutory appeal or granting the motion. Unfortunately, that judge died before acting at all and, almost a year later, his replacement entered an order granting summary judgment.
At issue is whether the landowner is required to anticipate any untoward occurrence during construction, hire expert witnesses to debate the state's experts as to the likelihood of such an occurrence and urge juries to grant awards for damages which may never be incurred. I suggest that while it may be fair to require the injured to recover for all damages which are to likely flow from an event in the past, it is quite another to require a landowner to anticipate all conceivable damages from physical activity yet to take place. It seems to me that remote damages from the construction process should be left for recovery in separate proceedings and that recovery for construction activity damages in eminent domain proceedings should be limited to those which are reasonably likely.

*1256 II
The majority suggests that our precedents dictate that recovery be limited to an application of the "before and after" in partial takings. They dismiss out-of-hand our pronouncements in Mississippi State Highway Comm'n v. Tomilinson, 223 Miss. 623, 629, 78 So.2d 797, 799 (Miss. 1967), and Jackson Municipal Airport Authority v. Wright, 344 So.2d 471, 473 (Miss. 1977), to the effect that what is recoverable in one action and therefore not recoverable in a subsequent action is damages for what is reasonably likely to occur. The suggestion is that landowners and our courts should presume that proposed construction will be of "such character as to do the most injury to the remaining property." Majority opinion ante, p. 1254. Such a presumption taken to its logical end results in an after value of practically zero in every case, if no rule of reason is required. If we can hold that the destruction of a house five to seven hundred yards away from the construction site is to be presumed without a single shred of evidence in the record that such destruction is possible, let alone reasonably likely, what is the limit?
Even the cases relied upon by the majority recognize exceptions to the before and after rule. In what is described as the seminal case on this issue, Miss. State Highway. Comm'n v. Hillman, 189 Miss. 850, 198 So. 565 (1940), we find the quote on which the majority relies, "compensation awarded to the landowner in an eminent domain proceeding is conclusively presumed to include all damages resulting to him." When we examine the cases relied on in Hillman for the quote, 189 Miss. at 868, we find in the first such case a description of this presumption in the following language: "And if it may reasonably be supposed that a proper construction of the road will subject adjoining land to overflow, or obstruct its drainage, such damages should be estimated and allowed for." Yazoo & M.V.R. Co. v. Davis, 73 Miss. 678, 693, 19 So. 487 (1896) (Emphasis supplied.)
While it is impossible to review all of the citations in Nichols on Eminent Domain[1] for the presumption it identifies, a cursory review is to the effect that the presumption is not supported or is restricted to reasonably anticipated injury. For example, in the first case appearing as support for the quoted language, Hoy v. Kansas Turnpike Authority, 184 Kan. 70, 334 P.2d 315, 324 (1959) we find the following: "Elements affecting value that depend upon events, which while possible are not fairly shown to be reasonably probable, should be excluded." See also, City of Elkhart v. NoBi Corp., 428 N.E.2d 43, 45 (Ind. 1981) (compensation should be allowed for damages which result naturally and ordinarily from the taking); Mobile, & O.R. Co. v. Postal Tel. Cable Co., 76 Miss. 731, 751, 26 So. 370, 373 (1899) (possible future occurrences that are too remote or too contingent should not be taken into account in computing damages).
Clearly, before today, speculative damages were not recoverable. Without an element of reasonable foreseeability a landowner could not expect to recover for damages that could possibly, in someone's imagination, be caused by construction. It would be unjust to require the government to pay for potential incidents of damage that are remote, speculative, and extremely unlikely to occur. By the same token, it would be unjust to preclude landowners from recovering for all the harm that is actually inflicted upon them by way of the government taking their property.
These two objectives can coexist. They have in the past. For example, in the case of Berry v. United Gas Pipeline Co., 370 So.2d 235 (Miss. 1979), a gas pipeline utility was allowed to condemn an easement for purposes of constructing a pipeline across three contiguous parcels of land on which the condemnee Berry owned an undivided interest in varying degrees. Berry was duly compensated for his damages that flowed directly from the mere act of the government taking an interest in his property. Berry at 236. The Court went on to hold, in addition, though, that "if other damage to other property of the owner occurs in the construction on the property *1257 taken for public use, such damage [should be] the subject matter of a separate lawsuit."
Today's decision either forecloses all opportunity or creates opportunities for all landowners to maximize recovery based on speculation. Either result is lamentable. I dissent.
DAN M. LEE, P.J., joins this dissent.
NOTES
[1] Swett proceeds on the premise a landowner's negotiated settlement with the condemnor is just as preclusive as a final judgment after an eminent domain trial.
[2] This state is also held to the Fifth Amendment's "just compensation" standard. Nollan v. California Coastal Commission, 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677, 687 (1987); Chicago, Burlington & Quincy Railroad Company v. Chicago, 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979, 986 (1896).
[1] Nichols on Eminent Domain (Rev.3d ed. 1990) § 14.15.