BRADY, Justice:
This eminent domain proceeding to condemn a right-of-way through the lands of appellees in order to construct power transmission lines was brought in the First Circuit Court District of Jones County, Mississippi. From a verdict and judgment in the amount of $13,000 returned in the county court and affirmed by the circuit court this appeal is prosecuted.
The appellees are the owners of approximately 204 acres of land which is used principally as pasture land for growing timber. There are improvements on the property which will not be disturbed or taken by the condemnation. The right-of-way which condemnor seeks is one hundred and twenty-five feet in width and approximately two thousand feet in length, *473 running diagonally across the north third of appellees’ property. This right-of-way is necessary for the construction of an electrical transmission distribution line. Also sought to be condemned by the appellant is the right to cut and keep clear danger trees beyond the right-of-way. Danger trees are defined as those which, in falling directly toward the power lines, would strike or come within five feet of striking any structure or conductor.
The right-of-way comprises approximately 7.4 acres, of which one and a half to two acres are in permanent pasture and the remainder is in cutover timber lands, the last cutting having been in about 1932. The entire one hundred twenty-five foot right-of-way will be cleared of standing timber and will be kept clear. Two construction towers will be located on the land of ap-pellees and the height of the overhead conductors or wires will have a minimum height for clearance of at least thirty-six feet. The appellees are denied the right to grow timber on the right-of-way but they are granted any reasonable use of the land not inconsistent with the rights of the condemnor, including the growing of row crops and pasture, with ingress and egress. Timber on the right-of-way, if not removed by appellees before clearing, will be cut and left on the right-of-way for salvage by ap-pellees if they so desire. The present danger trees and those which later become danger trees will be cut by appellant if not cut by appellees. These trees extend beyond the right-of-way variable distances, depending upon the height of the trees.
The first error urged is that the verdict of the jury is so excessive as to evince bias, passion and prejudice on the part of the jury and shocks the enlightened conscience. The other errors relate to the overruling by the trial court of appellant’s motion to exclude the testimony of appel-lees and their three witnesses.
It is obvious that between the damages estimated by appellees’ witnesses and appellant’s witnesses there is a great gulf of Lazarían proportions over which this Court is unable to pass. For this reason, it becomes necessary to consider the nature, adequacy and worth of all testimony offered by the litigants with reference to the damages sustained by appellees as a result of the easement taken by appellant. The following table shows the values placed on the Walters’ property by each of .the six witnesses who testified, and also shows the damages estimated by each of these witnesses.
Before After
Value Value Damages
Appellants Witnesses

Appellee and His Witnesses
Floyd Walters $45,000 $27,000 $18,000
John Blackledge 66,500 42,800 23,700
John Thompson 41,000 25,000 16,000
Walter Bradley 45,000 27,000 18,000
Though Mr. Adamson fixed damages at $1,750, he was unable to say what portion of the $1,750 was attributable to the power transmission line being placed on the land, what part was attributable to the timber on the right-of-way, or what part was at *474 tributable to the danger trees which would have to be felled outside the right-of-way. In determining the values before and after the taking, this witness was wholly unable to specify a particular amount on any item so that the jury could evaluate his testimony.
Mr. James Vardaman, a consultant forester and author of Tree Farm Business Management, testified that he had extensive experience in buying, selling and caring for farm and timber lands in Mississippi, but he could not remember buying any land in Jones County within the last three years. Although he assessed the damages at $1,716, he was unable to “breakdown” his estimates to show what factors he took into consideration in reaching that amount. He did not count trees to be cut on the right-of-way or place any value on them and did not estimate the amount of pulpwood. He placed no specific valuation on the 7.4 acres taken for the easement on a per acre basis or as a whole. He did not know the number of danger trees to be felled and placed no valuation on them. Although an expert farm manager, his testimony as to the before and after values is vague and indefinite in that no reason could be given by him concerning how he determined the values.
In setting his damages at $18,000 the ap-pellee Floyd Walters, who was the ablest witness to testify, reasoned that instead of 7.4 acres the condemnors were getting 16 acres, the area in which he says he will be denied the future right to cut timber. However, this reasoning was refuted by the appellant Power Company. Mr. Walters placed a value of $5,432 on the timber, which he said involved only logs. He placed no separate value on the danger trees. He did take into consideration one thousand small trees which he valued at $5,000 at the present time. He asserted future damages due to the fact that the trees would grow and, in his estimation, ultimately would be worth $100 per tree twenty years from now. In considering the timber which he would lose, the appellee stated that on the north side of a road running through his property which is traversed by the right-of-way there were 246 trees that averaged 253 feet, giving him a total of 50,653 feet of lumber. On the south side he would lose 274 trees averaging 212 feet, with a loss of 58,131 feet of lumber. Mr. Walters stated that he did not consider any pulpwood and he considered no tree under eight inches breast high in his estimate. While it is probable that the appellee Walters knew how to utilize the Doyle scale in arriving at the amount of board feet in a tree, it is impossible to establish this fact from his testimony for he explained it as follows:
(T)ake any size tree — take a say 14 inch tree 20 foot long, the Doyle scale gives it there to my recollection 125 feet, and you can figure it out, and the way you figure it out and it will work on every log you have got, take 4 from the size of it, say it is 14 inches and 20 feet long, take 4 from that leaves you 10 don’t it? You take half of that and multiply that 14 by half of that and then multiply that what you get from that other half of it, five again and then divide it by this 4 you have taken from it and you can get it accurately on any tree in the woods.
The appellee estimated that he had a total of 108,000 feet of timber presently standing on his lands and that of this amount between 54,000 and 72,000 were on the right-of-way. He used the Doyle scale in arriving at these figures. Although he testified that he took into consideration the undesirable condition which would be created by the location of a power line on his land, the bulk of appellee’s damages was based on the cutting of timber and the loss of the future growth for the next twenty years as well as the fact that in his estimation he would lose the use of 16 acres rather than the 7.4 acres in the right-of-way proper. The appellee did not consider what would be done with the timber on the right-of-way after appellant cut it, and estimated his loss under the presumption that he would not obtain any benefit or remuneration for *475 the timber which would be cut from the right-of-way or from the danger trees which would be felled. On this point the record discloses that the timber on the right-of-way and the danger trees off the right-of-way, if not removed by the landowner, will be cut and left on the right-of-way or adjacent thereto for salvage by the appellee, if he so desires.
John Blackledge, a veteran witness in numerous Mississippi Highway Commission condemnation suits, estimated damages at $23,700. The record discloses that in the five years prior to the trial Mr. Blackledge’s experience in purchasing farm and timber lands on the open market consisted of the purchase of one 66 acre tract at a distress sale, which he sold a year and a half later. Mr. Blackledge knew of no comparable sales and made no effort to find any.
John Thompson estimated appellee’s damages to be $16,000. Appellant urges that Thompson’s testimony should have been excluded by the trial court. The record reflects that the witness Thompson has neither bought nor sold land since 1948 and has made no appraisals in the last twelve years. Mr. Thompson was not familiar with the area of the right-of-way and did not know whether it would be fenced. Mr. Thompson had very little knowledge of the appellee’s pasture land and was not familiar with what constituted a danger tree. He knew of no comparable sales and his estimate was based on an arbitrary sample of six trees.
Walter Bradley estimated ap-pellee’s damages to be $18,000. His testimony showed a complete lack of knowledge of the right-of-way and the basic factors to be considered in appraising the before and after values. He knew nothing of the location of the structures to be placed on the right-of-way and knew nothing about the height of the line to be supported by these structures. He was not familiar with the area comprising the right-of-way or its width and knew nothing of the area involved in the pasture land. He had not made any appraisals and had not bought and sold any land in the past thirty-five years. The $13,000 verdict indicates that the 7.4 acres of land actually condemned, exclusive of danger trees, is worth in excess of $1,750 per acre for what is principally timberland. This land is located eleven miles south of Ellisville and seven miles from Ovett. There is no proof that appellees will suffer any special or exceptional damages as a result of the severance,...No comparable sales were testified to which would indicate the value of any land approximating this figure. The weight of the evidence offered as to the value of the right-of-way principally involved with the growing of timber thereon, and that portion of the right-of-way which goes over pasture land is not substantially affected. After an objective reading of the testimony while comparing and keeping in mind the numerous decisions of this Court relating to the condemnation of land, including rights-of-way by power companies, we are compelled to conclude that the verdict of the jury is excessive and prodigal and that there is no rational basis under the competent evidence presented upon which the verdict could rest. As we said in Mississippi State Highway Commission v. Hall, 252 Miss. 863, 174 So.2d 488, 495 (1965), a jury verdict must not be so grossly excessive as to evince bias, passion or prejudice, but, on the other hand, it must be based on competent facts, not on conj ecture, supposition, or mere possibilities. On a retrial appellees can utilize in their proof land which is comparable for establishing values, and the errors in this trial can be avoided. Appellant can likewise be more explicit in its explanation of the factors on which the estimates of damages are based.
Although we have repeatedly held that the “before and after” test “swallows and absorbs” all other damages of every kind and character, Mississippi State Highway Commission v. Hall, supra, we have never held that the “before and after” rule is a magical formula such as “Open Sesa *476 me” which was utilized by Ali Baba and the forty thieves in opening up their treasure cave. The bare statement by a witness of the value of the land before the taking and the value after the taking, with the difference determined by subtracting the latter from the former, is of little benefit to the jury in determining the amount of damages occasioned by the taking. This is particularly true when the witness knows of no comparable sales and is not familiar with the land in question,..or. its..v,alua .and the value of comparable land in the area. The amount so determined represents only an esoteric, subjective conclusion of the witness when that witness cannot support his estimates by comparison with comparable sales, if there be any. If no comparable sales exist, then the witness, exemplifying by specific detail, should at least be able to designate the value of the various items which are considered by him, including all improvements and benefits formerly used by the landowner but destroyed by the condemnor. The jury has no crystal ball which will enable it to determine the intrinsic worth of the values asserted by the witnesses. They should be advised of the factors, and their fair market value, which would aid in determining the damages which the landowner sustained under the before and after rule. We have heretofore held that a man does not have to be an expert in land values in order to testify with reference to damages as occasioned by the condemnation of land with which he is familiar. However, when the before and after rule only is used axiomatically, it is then incumbent upon that person so utilizing the rule to show that he is familiar with the land involved and acquainted with the uses to which the land has been put and the monetary benefits derived therefrom. If he is familiar with the comparable land in the vicinity and the sale thereof, and with the value of such land, he can then establish the merit or worth of his damage estimate. The jury, then, is not forced to conjecture or surmise in determining what factors he utilized in reaching the before and after values and the difference between them.
The Power Company, in substance, contends that appellees’ damages should be reduced by a sum equal to the salvage value of the trees marked by the Power Company as danger trees outside the right-of-way, and the trees that would be cut in clearing the right-of-way. We are of the opinion that the trees on the right-of-way and those marked as danger trees, which were standing at the time of the filing of the eminent domain proceeding, are to be considered as part of the entire property for the purpose of determining the before value of appellees’ property. We have held that the measure of damages is the difference between the aforementioned value before the taking and the value of the remaining property after the taking with the easement thereon being the dominant estate. There is no practical way to ascertain the difference between the before and after values unless the condemning authority is held to have taken, at the time the eminent domain suit was filed, the trees which it intends to cut. Therefore, the Power Company can use or sell the trees it cuts in building its right-of-way. It cannot require the landowner to market these trees or diminish the damages to the extent of the value of the severed trees, and cannot require the landowner to bear all expenses incident to the marketing thereof. The condemning authority which is exercising this extraordinary power can minimize its losses by salvaging the timber it has cut. This is in harmony with our rule with reference to buildings which are removed from the landowner’s property in Mississippi Highway Commission eminent domain cases.
On a retrial the errors relating to property taxes and assessed valuation of the land involved can be avoided.
Reversed and remanded.
GILLESPIE, P. J., and RODGERS, JONES, and INZER, JJ., concur.