836 So.2d 731 (2002)
MISSISSIPPI TRANSPORTATION COMMISSION
v.
HIGHLAND DEVELOPMENT, LLC and Highland Development General Partnership.
No. 2001-CA-00883-SCT.
Supreme Court of Mississippi.
December 5, 2002.
Rehearing Denied February 6, 2003.
*733 Barry Stuart Zirulnik, Jackson, Hollaman Martin Raney, Clarksdale, Billy Don Hall, Jackson, attorneys for appellant.
Paul R. Scott, Hernando, attorney for appellees.
Before McRAE, P.J., EASLEY and GRAVES, JJ.
McRAE, P.J., for the court.
¶ 1. A jury in the Special Court of Eminent Domain in DeSoto County awarded Highland Development, LLC and Highland Development General Partnership ("Highland" collectively) damages in the amount of $2,300,000 for the condemnation of 37.3 acres of its land for public use and damages to the remaining property. On appeal, the Mississippi Transportation Commission ("MTC") asserts that the trial court erred in (1) denying a new trial because the jury award is not based on credible facts and is so excessive as to evince bias, passion and prejudice, (2) allowing portions of Highland's expert testimony, (3) denying its motion for a new trial because Highland's valuation expert allegedly failed to adhere to proper appraisal principles, and (4) refusing to strike for cause potential jurors.
¶ 2. While this was not the best tried case, we find no prejudicial error or any abuse of discretion that warrants reversal. The disparity in the experts' valuations alone is not indicative of bias, passion and prejudice. Both expert opinions were attacked through direct and cross-examination and with rebuttal testimony in the presence of the jury. A close review of the record indicates fault in both opinions, and the jury decided whether the respective testimony was credible. More importantly, the jury had the opportunity to view the property and assess their own damages independent of the experts' opinions. We find no reason to disturb those findings. Finally, we find that the trial court did not impede upon MTC's right to exercise peremptory challenges. We, therefore, affirm the judgment based on the jury verdict.

FACTS
¶ 3. Neil Burckart, a principal of Highland, obtained an option to purchase 462.3 acres in DeSoto County for residential development. Currently, 134 acres of the land is developed, and 328 acres contains a 102 acre lake and is otherwise undeveloped. Nine lots were sold from August through December of 1994, seventeen in 1995, seventeen in 1996, thirteen in 1997, two in 1998, and two in 1999. In 2000, MTC initiated condemnation proceedings for 37.3 acres to be used in the relocation and reconstruction of Mississippi Highway 304. At that time, there were 79 unsold subdivision lots which were from 1/5 to 3/4 mile away from the highway.
¶ 4. MTC's expert valuation appraiser, Dan Loflin, Jr., estimated the before value of the entire tract to be $2,813,700. He valued the undeveloped 226 acres, excluding the lake, at $4,000 per acre for a total of $906,500. He valued the unsold lots at $29,500 each and allowed for an absorption *734 period of 4 years at a sales rate of 18 lots per year to reach the estimated net present cash value of the unsold lots at $1,907,200.
¶ 5. Loflin's total after value estimation is $2,615,925. He found that the value of the subdivision lots and the remaining undeveloped acres was unaffected by the project. He valued the 189 remaining acres (226 acres minus the acquired 37 acres) at the same $4,000 per acre for a total of $757,200. Loflin determined that the cost of relocating the sewage lagoon, including engineering and design costs to be $48,475. The difference between Loflin's before ($2,813,700) and after ($2,615,925) values equals $197,775, his estimation of just compensation. Loflin attributed the drop in lot sales to varying topography, competition from other developments, or interest rates.
¶ 6. Kip Walker, Highland's valuation expert, estimated the total value of the land before the taking to be $4,260,000. He valued the 79 developed lots at $32,000 per lot totaling $2,528,000; 211.6 acres of undeveloped land at $8,000 per acre totaling $1,693,298; 15 acres with low elevation at $2,500 per acre totaling $37,500; and gave no value to the 102 acre lake.
¶ 7. Walker estimated the total value after the taking to be $1,960,000. This figure includes the 79 developed lots at $17,500 per lot totaling $1,382,500; 50 acres of undeveloped land south of the new highway within 750 feet of the new highway line at $2,500 per acre totaling $125,000; 109.34 acres of undeveloped land south of the new highway fronting on Green River Road at $4,000 per acre totaling $437,344; 20 acres of undeveloped land north of the new highway at $1,000 per acre totaling $20,000; 15 acres of land with low elevation at $2,500 per acre totaling $37,500; and no value to the 97 acres left of the lake for a subtotal of $2,002,344. From this subtotal, Walker subtracted $45,000 for the cost to reconstruct the sewer lagoon for the rounded total of $1,960,000. The difference between Walker's before ($4,260,000) and after ($1,960,000) values equals $2,300,000, his estimation of just compensation.
¶ 8. Hartley Fairchild, an expert, rebutted much of Walker's testimony. He basically concluded that the subdivision was poorly planned and that the remaining lots did not sell because the topography made grading more expensive and the lots less desirable. He also testified that the highway plans had a positive impact on the subdivision due to close proximity.
¶ 9. MTC filed several motions in limine and a motion to strike much of Walker's testimony, all of which the trial court denied. After viewing the property and hearing testimony for five days, the jury unanimously awarded Highland $2.3 million as just compensation and damages to the remainder. In accordance with the verdict, the trial court entered judgment for Highland. After being denied a new trial, MTC timely appealed to this Court.

DISCUSSION

I. Whether the jury award of $2,300,000 was based on conjecture, supposition or mere possibilities and was so grossly excessive as to evince bias, passion and prejudice.
¶ 10. We review the denial of a new trial for abuse of discretion. Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 722 (Miss.2001). Also, in eminent domain cases, we must be satisfied that the award was not so excessive as to evince bias, passion, or prejudice and that it is supported by competent facts, not conjecture, supposition, or mere possibilities. Miss. State Highway Comm'n v. Viverette, 529 So.2d 896, 900 (Miss.1988)
*735 ¶ 11. This entire case boils down to a battle of the experts. MTC argues that the disparity in valuations[1] evinces bias, passion and prejudice or at least raises a red flag of doubt as to whether the jury was furnished with a reasonable basis upon which to fix the value of the property. To support this contention, MTC submits that Walker's testimony was based on conjecture, supposition or mere possibilities. MTC complains that Walker used "judgment" where there was no factual data, and therefore he was speculating. The trial court allowed Walker's testimony noting that Walker could be questioned on cross-examination.
¶ 12. MTC notes that this Court has held that a "disparity in value could only have bias and prejudice for the jury in their duty of reaching a fair valuation." McDuffie v. Miss. State Highway Comm'n, 239 Miss. 518, 522, 124 So.2d 284, 285-86 (1960). No explanation is provided for the holding. There were two witnesses for the State whose valuations were within $50 of each other. The landowners' witness testified that the property was worth almost five times as much. Id. at 285. However, in the case sub judice only two valuation experts testified; there was not a third expert to corroborate or discount the two experts' figures.
¶ 13. MTC also cites four other cases where this Court has reversed the jury award or suggested a remittitur when there has been a vast discrepancy in valuation amounts. See Miss. Power Co. v. Walters, 204 So.2d 471 (Miss.1967); Miss. State Highway Comm'n v. Trammell, 252 Miss. 413, 174 So.2d 359 (1965); Miss. State Highway Comm'n v. Hillcrest Farm, Inc., 252 Miss. 154, 171 So.2d 491 (1965); Miss. State Highway Comm'n v. Pepper, 250 Miss. 347, 164 So.2d 911 (1964).
¶ 14. However, more recently we have noted that it is not uncommon for damages estimates to vary widely in condemnation cases. State Highway Comm'n v. Warren, 530 So.2d 704 (Miss.1988), Smith v. Miss. State Highway Comm'n, 423 So.2d 808 (Miss.1982). Also, we have hesitated to interfere with jury verdicts in eminent domain cases especially when the jury has viewed the land. Miss. Transp. Comm'n v. Bridgforth, 709 So.2d 430, 441 (Miss. 1998); State Highway Comm'n v. Havard, 508 So.2d 1099, 1105 (Miss.1987).
¶ 15. MTC claims that it was merely taking 37 acres of undeveloped land and was doing no damage to the remainder. Highland asked the jury to consider damage to the whole property. We have noted that
the rule in this State is that when a part of a larger tract of land is taken for public use, the owners should be awarded the difference between the fair market value of the whole tract immediately before the taking and the fair market value of the remaining property immediately after the taking, without considering the general benefits or injuries to the use of the taken land.
Miss. State Highway Comm'n v. Hancock, 309 So.2d 867, 870 (Miss.1975). Also in eminent domain cases we are "not at liberty to order a new trial unless the verdict is so at variance with the evidence as to shock the conscience of the court ..." Id. Further, if there is any substantial evidence supporting the award, we will not interfere, especially when the jury has viewed the property. See Bridgforth, 709 So.2d at 441; Miss. State Highway *736 Comm'n v. Franklin County Timber Co., 488 So.2d 782, 787 (Miss.1986) (citing City of Jackson v. Landrum, 217 Miss. 10, 63 So.2d 391 (1953)).
¶ 16. The jury members are all taxpayers, and they know that the money paid in eminent domain proceedings essentially comes out of their pockets. Further, the jury is not bound by the opinions of the experts; the jury is free to assess its own damages independently of the opinions offered. See Franklin County Timber Co., 488 So.2d at 787 (citing Miss. State Hwy. Comm'n v. Terry, 288 So.2d 465, 466 (Miss.1974)).
¶ 17. The verdict here is supported by the evidence and is not outrageous or extravagant. Indeed, there was considerable testimony by both experts, and the award is the exact amount that Walker opined to be just compensation. The fact that the two experts have differing opinions as to the valuation of the property does not on its face indicate that there was bias or prejudice. See Franklin County Timber Co., 488 So.2d at 788.
¶ 18. Every complaint on appeal regarding Walker's testimony, and Burckart's for that matter, was brought out at trial in front of the jury either through direct examination, cross-examination or with rebuttal testimony. The jury viewed the land, heard the experts' opinions along with the extensive cross-examination and rebuttal testimony, and made an assessment. We find no reason to disturb these findings.

II. Whether the trial court erred in allowing portions of Walker's testimony.
¶ 19. MTC contends that it was error for the trial court to allow Walker and Burckart to attribute damages to the announcement of the proposed plans claiming that it violated the before and after rule. The trial court denied MTC's motion in limine and objections at trial to the allowance of their testimony in this regard.
¶ 20. In Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 172 So.2d 196 (1965), this Court held that the date of the taking is the date the condemnation proceedings are initiated. This is the date from which the before and after values should be determined, not the date of publication or announcement of plans. In Wood, lot prices increased immensely after condemnation plans were announced. Nevertheless, the date the proceedings were commenced, three years later, was the date from which valuations should have been based. Id.
¶ 21. Just as a developer's decision to stop development in a subdivision upon learning of a potential condemnation proceeding cannot be used in the valuation process, the effects on property values after an announcement is made but before proceedings are initiated cannot be attributed to damages. See Jackson County Dev., Inc. v. Miss. State Highway Comm'n, 262 So.2d 416 (Miss.1972). This Court has clearly rejected evidence of enhancement or diminution in value due to publication of plans in arriving at the before value. See Wood, 252 Miss. 580, 172 So.2d 196.
¶ 22. Burckart testified that the 1997 announcement of the proposed highway plans may have been one of the reasons for the decline in sales especially since once he learned of the plans, he told prospective buyers of them. Burckart also testified that there were other possible causes and did not merely limit his reasoning for the decline in sales to the announcement of the project. His testimony as to the valuation and damage to his land is allowed as long as he does not hold himself out as an expert. See Potters II v. *737 State Highway Comm'n, 608 So.2d 1227, 1235 (Miss.1992). There is no indication that Burckart's testimony was in violation of this principle.
¶ 23. Walker testified that the value of the lots in 1997 was $17,500 and that he increased the value per lot to $32,000 per lot "because of the stagnation in lot sales, and the fact that the subdivision was not successful in selling lots past that point, and because it was typical or common for other subdivision lots in the county for the value or prices to increase along with the value of the raw land." He claimed that the highway plans were not part of his analysis of the property value. Walker was questioned and cross-examined at length about this and other statements. The issue then became one of credibility, not admissibility, and Walker's credibility was certainly attacked at every corner. MTC was denied no opportunity to discredit his testimony.
¶ 24. Loflin, too, was questioned at length about his appraisal.[2] The record is riddled with testimony that indicates that it is not unreasonable for the jury to have discounted Loflin's opinions and given more weight to Walker's. "It is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Clark v. Ill. Cent. R.R., 794 So.2d 191, 198 (Miss.2001). Therefore, the trial court did not err in admitting Walker's testimony. See Franklin County Timber Co., 488 So.2d at 787.

III. Whether the trial court erred in denying MTC's motion for new trial since Walker did not use certain appraisal principles in deriving fair market value.
¶ 25. MTC argues that Walker applied an improper appraisal methodology and as a consequence, did not provide the jury with fair market values thereby yielding grossly inflated figures. Because of this, MTC contends that it was error for the trial court to deny it a new trial.
¶ 26. Specifically, Walker testified that if he was appraising the value of the subdivision for a buyer or a lender for mortgage purposes, he would apply a discount rate because the buyer or lender would factor a reasonable time for 79 lots to sell, i.e. an absorption rate. He explained that the value in those appraisal circumstances would be discounted back to present value. He stated that in eminent domain proceedings discounting is not appropriate because the "buyer" is acquiring the land at one time, as of the date of the taking.
¶ 27. The standard for determining the fair market value is
the sales price that would be negotiated between knowledgeable and self interested persons, one who wants to purchase and one who wants to sell, the seller being under no obligation or compulsion to sell, and the buyer being under no necessity of having the property.
Potters II, 608 So.2d at 1231.
¶ 28. Highland submits that the issues were not properly preserved for appeal as no contemporaneous objection was made and it was not included in MTC's motion to strike Walker's testimony. Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709 *738 (Miss.2001). Rather, this issue was not specifically raised until MTC filed a motion for judgment not withstanding the verdict or new trial. MTC counters that its motion to strike Walker's testimony for generally failing to adhere to the before and after included the proper legal standard for valuing property.
¶ 29. Pursuant to Miss. R. Evid. 103(d), we may address this issue, even though it may not have been specifically preserved through objection at trial, if there was plain error. See also State Highway Comm'n v. Hyman, 592 So.2d 952, 957 (Miss.1991). We find no error.
¶ 30. Walker appraised the property as of the date of the taking. Therefore, it is not necessary to take into account an absorption rate when the property is being "sold" as of that date. The knowledgeable buyer in this case was buying the property on that date. This holding is not in contravention to Potters II.

IV. Whether the trial court's refusal to strike for cause potential jurors effectively abrogated MTC's rights under Miss. R. Civ. P. 47.
¶ 31. MTC requested that thirteen jurors be stricken for cause, but only two were stricken. Five others were removed with MTC's peremptory challenges.[3] The trial court declined to excuse the others. Two of them actually served on the jury, and a third served as an alternate. MTC contends that by failing to strike the jurors for cause, the trial court forced MTC to use its peremptory challenges, and thereby effectively abridged MTC's right to exercise peremptory challenges pursuant to Miss. R. Civ. P. 47(c).
¶ 32. MTC relies upon United States v. Nell, 526 F.2d 1223 (5th Cir.1976), where the court reversed a jury verdict for failure to excuse individuals for cause. In Nell, the defense was forced to strike juror Bougher with a peremptory challenge after the trial court refused to strike him for cause even though his strong opinions and prejudices were acknowledged. Id. at 1228. Another juror had personal knowledge regarding one of the claims, and even though he stated he could be impartial, the trial judge did not question him as to the possibility or the depth of his potential prejudice. Id. at 1229.
¶ 33. MTC also cites City of Live Oak v. Townsend, 567 So.2d 926 (Fla.Dist.Ct. App.1990) in which similar questions were posed during voir dire, but the potential jurors were more adamant and zealous about their opinions, and most of them stated that they would not follow instructions contrary to their opinions regarding eminent domain. Id. at 927.
¶ 34. We have noted that "[a] trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause." Smith v. State, 802 So.2d 82, 86 (Miss. 2001). Further, the trial judge "due to his presence during the voir dire process, is in a better position to evaluate the prospective juror's responses ..." Id. (citing Wells v. State, 698 So.2d 497, 501 (Miss.1997)). Therefore, we will not set aside a determination that a juror is fair and impartial unless the trial judge was clearly wrong. Id. (citing Wells, 698 So.2d at 501).
¶ 35. The circumstances in Nell and Townsend are not comparable to this case. Here, none of the potential juror's expressed rigidness in their opinions. After being polled individually by the judge, they each vowed that they would remain impartial and follow the law and instructions of the court. Ample measures were taken to ensure a fair and impartial jury. *739 See Tighe v. Crosthwait, 665 So.2d 1337, 1339-40 (Miss.1995). Hence, the trial court did not abuse its discretion in declining to strike certain jurors for cause; and therefore it did not impede upon MTC's right to exercise peremptory challenges.

CONCLUSION
¶ 36. The disparity in the experts' valuations alone is not indicative of bias, passion and prejudice. Both expert opinions were attacked through direct and cross-examination, and with rebuttal testimony in the presence of the jury. A close review of their testimony indicates fault in both opinions. More importantly, the jury had the opportunity to view the property and assess their own damages. Quite simply, the jury gave more credibility to Highland's expert, and we find no reason to disturb that finding. Also, we find the trial court did not abuse its discretion in declining to strike certain jurors for cause, and therefore it did not impede upon MTC's right to exercise peremptory challenges. Finding no reversible error or abuse of discretion, we hereby affirm the trial court's judgment entered on the jury verdict.
¶ 37. AFFIRMED.
DIAZ, EASLEY AND GRAVES, JJ., CONCUR. SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WALLER AND COBB, JJ. PITTMAN, C.J., AND CARLSON, J., NOT PARTICIPATING.
SMITH, P.J., dissenting:
¶ 38. In my view, the trial court erred in denying MTC's motion for new trial on all issues raised. The majority's discussion, analysis and results are incorrect as to every issue. I am therefore compelled to dissent.
¶ 39. Proper exercise of this Court's judicial function does not require it to believe the incredible. The total disregard of any factual basis for the assigned damages were so extreme, that in testifying to $2,300,00 in damages, the appraiser for Highland, Kip Walker, did not even bother to review construction plans concerning Highway 304 as it relates to the subject property. Because of the extreme, unreasonable, and unsupported valuations which Walker placed on damages to the land, there is no believable evidence to support the verdict in this case. The jury was allowed to consider a myriad of possibilities as to why lot sales fell, to speculate and surmise, but had no competent, factual basis to award damages so grossly excessive as to most assuredly evince bias, passion and prejudice.
¶ 40. By his own admission, Walker lacked any factual data to support the tremendous amount of damages he assigned to the remainder land. He presented no comparable sales. Preferring to look at the "big picture," Walker proceeded to assign damages of a 45% reduction in value ($14,500) per lot to each of the unsold lots for a total of $1,145,000. He damaged an additional 109 acres of undeveloped land by 50% of its value, again, regardless of distance from or view to the highway. This added another $437,344 in damages to the remainder. Continuing to admit he had no supporting data, another $275,000 in damages was assigned to 50 acres (a 69% reduction in value) within 750 feet of highway right of way. Indeed, comparable sales within a few hundred feet of I-55 were utilized by Walker to derive a before value of $8,000 per acre for undeveloped land; the same land he would then testify to be worth only $2,500 in the after condition due to highway proximity the same price he testified that land next to a sewage lagoon.
*740 ¶ 41. The Court has previously addressed cases where a tremendous gap existed, though few if any as wide as presented here. In McDuffie v. Mississippi State Highway Commission, 239 Miss. 518, 522, 124 So.2d 284, 285 (1960), this Court noted the condemnee's valuations before the taking were two and a half times those of the Commission's witnesses. This Court said: "Such disparity in value could only have bias and prejudice for the jury in their duty of reaching a fair valuation. The disparity is shocking to the enlightened conscience." Id. The same language was quoted in Mississippi State Highway Commission v. Hillcrest Farm Inc., 252 Miss. 154, 164, 171 So.2d 491, 495 (1965), where the Court was presented with the Commission's valuation in the range of $11, 850 to $22,300 versus the landowner's range of $103, 692 to $125,880. First noting that the landowner's witnesses figured damages six to seven times higher, the court observed that as in Mississippi State Highway Commission v. Pepper, 250 Miss. 347, 380, 164 So.2d 911, 926 (1964),
It is astonishing to note the vast gulfs of difference between the respective appraisals of appellant's and appellee's witnesses. It is incomprehensible that reasonable men, who are unbiased and qualified to make impartial appraisals can objectively be as far apart in their deliberate conclusions as is reflected in this schedule.
In Mississippi State Highway Commission v. Trammell, 252 Miss. 413, 415, 174 So.2d 359, 361 (1965), the Court noted that it "sometimes appears that the witnesses are testifying about entirely different property." With damage figures of approximately $4,000 from the Commission witnesses and $35,212 to $55, 591 from the landowner, the Court noted:
It may be seen readily that the difference in value testified to by witnesses for the Commission and those for the landowners is so great that the testimony really does not furnish the jury with a reasonable basis on which to fix the value of the property to be taken and the resulting damages. A jury, after considering the testimony and viewing the property, must fix a value, and it is not surprising that under such testimony as we have here its verdict in many cases is grossly excessive.
174 So.2d at 361.
¶ 42. In Mississippi Power Co. v. Walters, 204 So.2d 471 (Miss.1967), the Court, faced once again with a great disparity in values ($1,700 versus $18,000 to $23,700) which it described as a "great gulf of Lazarian proportions," explained that "becomes necessary to consider the nature, adequacy and worth of all the testimony offered by the litigants with reference to damages sustained by the Appellees." Id. at 473.
¶ 43. The acquisition in the case sub judice was of 37 acres of undeveloped wooded land taken from a 462 acre tact with extremely steep topography. Of the $2,300,000 award, $1,997,844 was for damages to the remainder land. Neil Burckart, a Highland principal, failed to testify to adverse effects on his improvements. Burckart acknowledged that the topography of the remaining lots, the increase in market competition and rising interests rates were other possibilities for a decline in sales. While Burckart acknowledged these factors as his client, Walker testified that he could not think of any other possibilities.
¶ 44. Walker's only assertion was that the decline in lot sales and values resulted from the announcement of highway plans. This does not give rise to an allowable damage claim. Neither Walker's qualifications as an expert witness nor the discretion *741 normally afforded the trial court can justify the unreasonable and factually unsupported valuations Walker placed on the remainder land.
¶ 45. Highland says it has presented substantial and compelling evidence in support of the $2,300,000 award. Reviewing the record demonstrates the award to be beyond all measure, unreasonable, and so shocking to the conscience that it evinces bias, passion and prejudice on the part of the jury. State Highway Comm'n v. Warren, 530 So.2d 704, 707 (Miss.1988). In sum, the record clearly demonstrates that Walker's testimony at best, is based on nothing more than conjecture, supposition or mere possibilities when attributing dwindling subdivision sales and extrapolated diminished undeveloped land values to the announcement of Highway 304 plans.
¶ 46. Second, considering the erroneously admitted evidence, it is clear that the before value was derived by including a non-compensable claim to damages resulting from announcement of highway plans. The before and after rule was violated and the values were based on speculative, inadmissible evidence.
¶ 47. Highland's approach violates the before and after rule and allowing such evidence was error as a matter of law. This Court has explained that whether the trial court erred in allowing evidence departing from the before and after rule is a question of law and that the proper standard of review of questions of law is de novo. Miss. Transp. Comm'n v. Fires, 693 So.2d 917, 920 (Miss.1997). The Court must reverse for erroneous interpretations or applications of the law. Where a court has exercised its discretionary authority in such a way that it misperceives the correct legal standard for admitting evidence, the deference customarily afforded trial courts in decisions concerning admissibility of evidence is precluded, because the error has become one of law. Id.
¶ 48. Additionally, the privilege to testify as an expert is not without bounds. This Court, under M.R.E. 702 remains the gatekeeper to assure that what is testified to has a requisite degree of general acceptance and reliability. As this Court has explained:
Rule 702 does not relax the standard that the expert must indeed be qualified to speak an opinion on a matter within his alleged field ok knowledge, nor does it relax the requirement that the scientific principle from which the expert's opinion is derived must be sufficiently established to have gained general acceptance in the particular field to which it belongs.
Kansas City So. Ry. v. Johnson, 798 So.2d 374, 382 (Miss.2001)(citing M.R.E. comment)(quoting Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923)). See also Bernhardt v. Richardson-Merrell, Inc., 723 F.Supp. 1188, 1192 (N.D.Miss.1988), aff'd, 892 F.2d 440 (5th Cir.1990)("Trial courts cannot accept uncritically any sort of opinion by an expert merely because his credentials render him qualified to testify.... Whether an expert's opinion has an adequate basis and whether without it an evidentiary burden had been met are matters of law for the court to decide.").
¶ 49. Walker acknowledges no factual data to support his opinion that the remainder property was damaged 50% and more. Nor did Walker offer any appraisal rule, principle or affidavits indicating that his allegations of extensive damages was even remotely established to have gained general acceptance in the field of appraising. Absent the above, Walker left the realm of expert and crossed the line into inadmissible speculation. In fact, throughout the course of his examination, the court repeatedly requested Highland's *742 counsel to establish admissible evidence forming the basis for Walker's opinion in accordance with M.R.E. 705.
¶ 50. When the court overruled MTC's motion in limine and continuing objections at trial, the court erred in allowing Burckart and Walker to attribute alleged damages to the announcement of proposed plans for Highway 304 in 1997.
¶ 51. Mississippi jurisprudence makes clear that the date of the filing of the complaint is the date as to which the land derives its immediately before and after value for assessment of damages. The law rejects claimed damages due to diminution of property values based on announcement of highway plans. The court erroneously allowed the landowners to calculate damages based on values as of 1997 rather than the date of filing. Evidence erroneously admitted, and upon which the jury's verdict was based, was not directed to the time of taking on March 22, 2000, resulted in a violation of the before and after rule in measurement of just compensation.
¶ 52. Walker's testimony circumvented the before and after rule, testifying that lot values in 1997 and thereafter to be $17,500. Rather than adopting this figure (assuming factual support) as his immediately before value as of March 22, 2000, Walker increased the value per lot to $32,000, testifying that but for the prospective presence of Highway 304, land appreciation should have brought these prices by March 2000. His estimations of value immediately before and after publication of highway plans were derived from 1997. He testified to them as if it were immediately before and after March 22, 2000. He was allowed over objection to testify that the value of the lots immediately after March 22, 2000 was $17,500. There is no escape from the fact that his claim of damages occurred in 197 and this purported after value was in reality Walker's before value. At the trial, Highland acknowledged that Walker's approach selected values three years earlier and assigned these values to March 22, 2000, but maintained the approach was proper.
¶ 53. The Court has addressed the issue of claimed enhancement or diminished property value as a result of public announcement of projects in Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 172 So.2d 196 (1965). This Court has made clear that publication of such plans and the making of those plans available for the public comment are not binding on the Commission, do not constitute any degree of certainty with respect to the final location of the project and do not constitute the binding notice for purposes of the taking of property and calculation of just compensation. Id. at 203. The legal notice is the date of institution of the suit in the Special Court of Eminent Domain. Id. In Pearl River, this Court clearly rejected publication of plans to constitute a taking so as to allow the jury to consider evidence of enhancement or diminution of value of property in arriving at the "immediately before" value, the Court ruled:
Thereafter, if the appellant had not agreed and stipulated that June 1, 1964 was the date of the taking, a day almost two years subsequent to the date of institution of the eminent domain suit on October 18, 1962, the latter date would have constituted the date of this taking, but certainly not March 19, 1959, the date of the publication of the District's authorization and contemplated condemnation.
Id. at 201.
¶ 54. In Highway Development Co. v. Mississippi State Highway Commission, 343 So.2d 477, 479 (Miss.1977), the Court reiterated that neither the newspaper publication of plans nor plans viewed at the *743 Commission offices nor even stakes in a field are binding on the Commission as a taking and that the date as to which land derives its before and after value is the date of filing of the condemnation suit.
¶ 55. Our Court's decisions are in accord with federal jurisprudence on this issue. In Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939), the federal government sought to condemn a perpetual easement of flowage in connection with the Mississippi Flood Control Program. The decision explains that "just compensation" for property taken for public purpose is, as in Mississippi, the value of the property at the time of the taking. Danforth, 308 U.S. at 283, 60 S.Ct. 231. The landowner argued that the passage of the Flood Control Act immediately diminished the value of his property due to its contemplated use as a flood way and that the Fifth Amendment required just compensation be measured from that date. The Supreme Court responded "a reduction or increase in the value of the property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a `taking' in the constitutional sense." Id. at 285, 60 S.Ct. 231. The United States Supreme Court rejected announcement of plans to constitute a taking for valuation purposes for much the same reasons of uncertainty as does this Court, explaining: "The mere enactment of legislation which authorizes condemnation of property cannot be a taking. Such legislation may be repealed or modified or appropriations may fail." Id. at 286, 60 S.Ct. 231.
¶ 56. In Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), a manufacturer of forest products sought compensation for claimed diminished value of land as a result of the publication of plans and initiation of the condemnation proceeding. In rejecting this argument and denying compensation for reduced land values, the U.S. Supreme Court explained that while the initiation of condemnation proceedings and publication of lis pendens notice may have reduced the selling price of the land, impairment of the market value of the property incident to otherwise legitimate governmental action ordinarily does not result in a taking and did not do so in that case. Id. at 15, 104 S.Ct. 2187. Noting that identification of the time a taking of land occurs is crucial to determination of the amount of compensation to which a landowner is constitutionally entitled, the United States Supreme Court explained:
The fling of a complaint in condemnation and a notice of lis pendens, petitioner contends, has the effect of preventing the owner of unimproved land thereafter from making any profitable use of it, or of selling it to another private party.... Such a thoroughgoing abrogation of the owner's rights, petitioner submits, surely constitutes a taking as soon as abrogation is effective, regardless of when the land is officially appropriated under the terms of the statute.... However, we do not find, prior to the payment of the condemnation award in this case, in [sic] interference with petitioner's property interests severe enough to give rise to a taking under the foregoing theory. Until title passed to the United States, petitioner was free to make whatever use it pleased of its property.... Nor did the Government abridge petitioner's right to sell the land if it wished. It is certainly possible, as petitioner contends, that the initiation of condemnation proceedings, publicized by filing of a notice of lis pendens, reduced the price that the land would have fetched, but impairment of the market value of real property incident to otherwise legitimate government action ordinarily *744 does not result in a taking. At least, in absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to the potential purchasers does not entitle the owner to compensation under the Fifth Amendment.
Id. at 13-15, 104 S.Ct. 2187 (footnotes and citations omitted).
¶ 57. In sum, Walker's testimony as to value did not follow the before and after rule and was not directed to the time of the taking on March 22, 2000, but rather to the time of the newspaper articles and publication of the highway plans three years earlier, in 1997. In determining fair market value, the Court, even under the most liberal interpretation of the work "immediately" has rejected construing such to mean fair market value three years earlier than the date that the eminent domain suit was filed.
¶ 58. Walker also failed to present any admissible and legally sufficient evidence for his assigned lot value of $17.500 immediately after March 22, 2000. The only value given was listings to which the trial court sustained an objection to such use and instructed the jury to disregard the listing prices. Another objection was overruled by the trial court which allowed Walker to testify to claimed damages to undeveloped land within 750 feet of the right of way after he admitted to having "no solid factual date to base that on." The trial court expressed hope that he would add to his testimony. However, he never gave any basis and said that "nobody knows what it's going to be like once the road is actually finished." This testimony did not go to the valuation of the property immediately before and after March 22, 2000. An objection was also sustained to this testimony as speculative. Highland simply moved on to his "opinions" without any factual basis given for the after value than the reason objected to and properly sustained, the fear in 1997 of the unknown effect of the presence of Highway 304. The comment by the trial court that it knew Walker would give some factual basis to his after value only enhanced the likelihood of an excessive verdict. The trial court erred as a matter of law in failing to strike Walker's "after" value testimony once the lack of foundational facts and evidence required under M.R.E. 705 was demonstrated. Thirdly, I also disagree with the majority in considering Walker's testimony, incorrectly carving out an exception to proper appraisal methodology. Walker admitted that he failed to apply proper appraisal principles and methodology when valuing the damage to the unsold subdivision lots at $1,145,500. Acknowledging that the price that a knowledgeable buyer would be willing to pay for these lots must be discounted to present cash value to allow time for the lots to sell, i.e. absorption rate, Walker excused his failure to do so based upon the erroneous assumption that different rules apply in eminent domain cases. Of course, this is not true and, by definition, fair market value is the price a knowledgeable buyer would be willing to pay. In failing to apply a discount rate, the claimed damage assigned to unsold lots was inflated by hundreds of thousands of dollars which the jury, in accepting Walker's testimony, fully awarded. As a matter of law, fair market value was not presented by Walker's testimony and the trial court erred in refusing to grant a new trial.
¶ 59. Walker acknowledged that proper appraisal principles in determining fair market value of the 79 subdivided lots required both discounting the derived before and after values to net present value. Walker explained that the discount rate is required to recognize that a knowledgeable *745 buyer, in arriving at the purchase price for subdivision lots, would make allowance for a period of time to sell those lots. He referred to this time as the absorption period. Walker then testified that though this approach is required for buyers or mortgage lenders, "it is not appropriate to do it [in eminent domain] when you are doing an appraisal as of he date of taking and condemnation." In excusing his failure to do a proper appraisal by attributing it to prohibitions imposed by eminent domain law, the issue itself becomes a question of law. Fires, 693 So.2d at 920 (Introduction of evidence based on the alleged departure from the before and after rule is an issue concerning application of the proper legal standard for valuing property and it is a question of law).
¶ 60. The majority cites Potters II v. State Highway Commission, 608 So.2d 1227 (Miss.1992), to argue that Walker should be given substantial discretion as to the factors used to establish his opinion. It is suggested that his failure to discount the before and after values he derived were issues of credibility subject to cross examination rather the admissibility. In actuality, the Potters II decision lends strong support to a finding of plain error. In that case, the appraiser maintained that the proper appraisal using the cost approach to value required the inclusion of business related franchise fees, start up costs, and entrepreneurial incentive. In affirming the trial court's exclusion of such evidence, this Court explained:
Here, two principles are at odds with one another. An expert witness by definition will be familiar with the types of theory and date on which he ought to rely in giving his opinion. See Rules 703, 703 Miss. R. Ev. When, as here, an expert opines that certain factors have to be considered in order to properly establish fair market value, we necessarily accord the expert substantial discretion. Attacks upon his foundational opinions often confuse admissibility with credibility. On the other hand, the expert has no authority to restate the law. Here the law provides what is being taken is a parcel of real estate to be valued at its highest and best use. But this does not afford an appraiser a license to testify as to value components of something that is not being taken, i.e., the particular business Potters, II was pursuing, the Burger King franchise and its various accouterments.
Potters II, 608 So.2d at 1234 n. 7
¶ 61. Applying the distinction in Potters II prohibits Walker from carving out an exception to proper appraisal methodology by telling the jury that the law of eminent domain prohibited valuation using proper technique because the damage was done as of the date of the taking. The definition of fair market value does not change as a result of eminent domain. When a partial taking occurs, fair market value is calculated twice, immediately before and after the taking. The knowledgeable buyer, on such occasions, would still factor the period of time it would take to sell 79 lots (and the interim finance costs associated therewith) in deriving a fair market value in the before condition as well as the after condition. Walker's expertise did not vest authority in him to restate the law of eminent domain which in no way prohibited him from using what he otherwise admitted to be application of proper appraisal methods and principles. In refusing to do a proper appraisal on the unsold lots using a discount rate, Walker inflated both his before and after values and increased his damage estimate.
¶ 62. This is not an issue of credibility. It is an issue of admissibility. By wrongfully attributing his failure to adhere to proper appraisal methodology to the requirements of eminent domain law, Walker *746 inflated his damage figure by hundreds of thousands of dollars which was then included in the jury's award.
¶ 63. Finally, I disagree with the majority's discussion, analysis and result in considering MTC's jury challenges for cause. The jury was composed of certain individuals who candidly expressed doubt as to whether he or she would be able to render an impartial verdict based solely on the evidence and the law. The circumstances seriously lend doubt that MTC was afforded its right to a fair and impartial jury. The circumstances indicate abuse by the trial court of a limited discretionary power in the jury selection. The amount of this verdict is so grossly excessive as to evince that bias, passion and prejudice expressed during voir dire. These circumstances warrant reversal.
¶ 64. In Tighe v. Crosthwait, 665 So.2d 1337, 1339 (Miss.1995), the Court found a duty by the trial court to see that a fair and impartial jury is empaneled. In Toyota Motor Corp. v. McLaurin, 642 So.2d 351, 357-58 (Miss.1994), the Court acknowledged the need to guard against even the appearance of unfairness and that when a rational challenge is made by a party to a prospective juror, and other jurors against whom no challenge is made are available and can be summoned, the trial judge should ordinarily excuse the challenged juror. This Court has described the trial court's discretion to deny a reasonable challenge for cause as "limited" and "considerably narrowed" when there is a reasonable challenge and without great inconvenience, other jurors can be summoned. Id. at 357, (citing Scott v. Ball, 595 So.2d 848, 850 (Miss.1992); Hudson v. Taleff, 546 So.2d 359 (Miss.1989)). The trial judge accepted the basis for challenge in dismissing three other individuals. Reasonable doubts about juror fairness and impartiality arise when jurors, in response to counsel's questions, candidly express bias irrespective of court instructions and then minutes later, in response to questions by the court, profess that they will follow instructions despite their bias.
¶ 65. It was error for the court to deny MTC's challenges for cause as to these individuals. The jury selection process is procedurally set forth in URCCC 4.05. In accordance with that rule, the trial court considered MTC's challenges for cause before the parties were required to exercise peremptory challenges. In further violation of its right to a fair and impartial jury pursuant to Mississippi Constitution Article 3 § 31, MTC was effectively deprived of and was forced to exhaust its complement of peremptory challenges under M.R.C.P. 47 in order to excuse as many of these individuals as possible. The trial court denied Plaintiff's motion to strike each of the individuals for cause with the exception of two individuals. It is noteworthy that one of the prospective jurors the court allowed stricken for cause expressed an ability to follow the law after being admonished by the court following voir dire by counsel. One reason given for striking him for cause, however, was that he thought the property (owner) should get more money than "just compensation" and that although at the end of the court's questioning, he said he would still follow the instructions. This was the same response given by the eleven individuals whom the court refused to strike for cause. In opposing those strikes for cause, Highland maintained that the court's questioning rehabilitated these individuals' ability to apply the law with fairness and impartiality. Without doubt, MTC's counsel desired but was unable to use its peremptory challenges to excuse other individuals on this jury. Highland, on the other hand, had its full compliment of peremptory challenges and used the majority of them to strike individuals having benign or no responses whatsoever to questioning. The number of individuals that the court refused *747 to dismiss for cause exceeded the number of peremptory challenges.
¶ 66. In United States v. Nell, 526 F.2d 1223, 1229 (5th Cir.1976), prospective jurors expressed strong convictions and personal belief for and against certain laws of the United States regulating the conduct of labor unions. In reversing the jury verdict for failure to excuse these individuals for cause, the Court explained that as a general rule it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges. Id.
¶ 67. In the case sub judice, the challenged individuals made it clear they had a strong opinion that the landowner was entitled to something extra if his/her land was taken against his will. Others indicated they would award in excess of fair market value because of disagreement with the law and/or inconveniences the landowner was experience. A prospective juror should be excused for cause if there is a reasonable doubt as to whether he or she will be able to render an impartial verdict based solely on the evidence and the law.
¶ 68. For all of the foregoing reasons including the lack of factual data to support the verdict, the violation of the before and after rule, the improper use of appraisal methodology and the failure to excuse the possible impartial jurors, I dissent in view of the grossly excessive verdict rendered by the jury for Highland and against MTC. I would reverse and remand for a new trial.
WALLER AND COBB, JJ., JOIN THIS OPINION.
NOTES
[1] Loflin testified that the total just compensation was $197,775. Walker testified that the total just compensation was $2,300,000.
[2] Interestingly enough, Loflin originally estimated the before value of the property to be only $49,300 less than Walker's before value. He changed his appraisal the month before trial after MTC's counsel advised him that he had used an "incorrect method of appraising." Loflin explained that at the time of the taking the subdivision was unplatted even though Burckart told him the plats just needed to be recorded. Loflin only considered platted lots and changed his appraisal to the lower figure mentioned above.
[3] MTC used four of its peremptory challenges and one additional challenge for alternates.